THE CITIZENS' BANK OF BALTIMORE *vs.* JACOB GRAFFLIN
and GEORGE W. GRAFFLIN.

*Recovery of Money paid in Ignorance—Usage.*

The plaintiffs held a draft of M on O, of Newburyport, Massachusetts, dated 31st of May, 1867, and payable to their order, ninety days after date, at the Shawmut Bank, Boston; the draft on their endorsement was discounted for them by the defendant. On the 22d of July, 1867, it was presented for acceptance, and not being accepted, was protested for non-acceptance. When the draft matured, it was protested for non-payment. On the 4th of September following, after the maturity of the draft, the defendant informed the plaintiffs that it had not been paid, and requested them to make it good, which was done by a deposit of funds for that purpose. On the next day the defendant sent the draft with the protests to the plaintiffs, who paid it by a check on the defendant. The draft was paid by the plaintiffs, as alleged by them, in entire ignorance that it had been protested in July for non-acceptance; as soon as they ascertained this fact, they informed the defendant that they had paid the draft in ignorance, and demanded a return of the money. The defendant refused to return any part of it. Upon an action brought to recover back the money, HELD:

That if the plaintiffs paid the money in ignorance, that the draft had been presented in July, and was not accepted, and was protested for non-acceptance, and that in fact no notice thereof was duly given to them through the post-office or otherwise, they are entitled to recover back the money.

To permit usage to govern and modify the law in relation to the dealings of parties, it must be uniform, certain, and sufficiently notorious to warrant the legal presumption that the parties made their contract with reference to the usage, and not according to the general and established law applicable to the case.

APPEAL from the Superior Court of Baltimore City.

At the trial below the plaintiffs offered the following prayer:

If the jury find from the evidence that the draft in controversy was discounted by the defendant for the plaintiffs

as partners, trading as J. W. Grafflin & Son, on the 5th of June, 1867, and was forwarded by the defendant to be presented to the drawee for acceptance, and was accordingly so presented on the 22d day of July, 1867, to the said drawee, who refused to accept the same, and that said draft was protested for non-acceptance on said 22d day of July, then the plaintiffs are entitled to recover a verdict against the defendant for $2,542.90, with interest in the discretion of the jury from the 4th day of September, 1867: provided the jury shall find, that on the 3d day of September, 1867, the plaintiffs at the request of the defendant and on being notified that said draft had been protested for non-payment, deposited with the defendant the sum of $2,670.77 to make good the said draft, and on the 4th of September, 1867, paid the defendant therefor the sum of $2,542.90 at the defendant's request, by check on the defendant for that amount. Provided the jury shall further find, that at the time of making said deposit and payment, the plaintiffs were in fact ignorant that said draft had been refused acceptance, and had been protested for non-acceptance on the 22d day of July aforesaid, and made the said deposit and payment by reason of such ignorance, and immediately after discovering the facts of, which they were thus ignorant, reclaimed from the said bank the sum so paid.

The defendant then offered the following prayers:

1st. That under the pleadings and evidence in the cause the plaintiffs are not entitled to recover, because there is no evidence of any well-established, uniform and notorious usage among the banks of Baltimore and those dealing with them in reference to the sending forward for acceptance, drafts discounted by them, such as that offered in evidence by the plaintiffs, and there is no evidence of the want of due notice to the plaintiffs of the protest of the said draft for non-acceptance.

2d. That the jury are not to consider any of the evidence

in the cause upon the subject of usage, the same having been taken subject to exception, and being inadmissible as not showing and not tending to show the existence of a general, uniform, certain and notorious usage among the banks of the city of Baltimore, and those dealing with them, in the discounting and forwarding for acceptance of drafts, such as that offered in evidence by the plaintiffs.

3d. That there is no evidence in the cause that due notice of the protest for non-acceptance of the draft offered in evidence, was not given to the plaintiffs.

4th. That if the jury find from the evidence that the defendant sent to the plaintiffs the draft and protests for non-acceptance and non-payment, offered in evidence, and requested the plaintiffs to send the defendant a check for the amount of said draft and costs of protest, and that the plaintiffs ascertained the amount of the check subsequently signed by them, if they shall find such subsequent signing from a memorandum in figures, written upon the protest for non-acceptance, and if they shall find that in said memorandum there was a distinct charge for the protest for non-acceptance, then said plaintiffs had ample means and full opportunity to ascertain before giving said check, the time when said draft had been presented to the drawee for acceptance, and their verdict must be for the defendant; no matter what they may find in reference to any usage of banks in the city of Baltimore, in reference to such drafts, and although they should find that due notice of the protest of said draft for non-acceptance, was not given to the plaintiffs.

5th. That if the jury shall find the facts stated in the defendant's fourth prayer, as to the sending by defendant to plaintiffs of said draft and protests for non-acceptance and non-payment, and the request of the defendant that the plaintiffs should send a check for the amount of said draft and costs of protests, and the ascertaining of the

amount of said check as stated in said prayer, before the signing and delivery of said check, and shall find that the plaintiffs had ample means and opportunity to ascertain before giving said check, the time when said draft had been presented to the drawee for acceptance, then their verdict must be for the defendant; no matter what they may find in relation to any usage of banks in the city of Baltimore, and although they should find that due notice of the protest of said draft for non-acceptance was not given to the plaintiffs.

The Court (DOBBIN, J.,) refused to grant the prayer of the plaintiffs, as also the prayers of the defendant, and gave the instruction following as to usage, in lieu of the defendant's first and second prayers:

That there is no evidence legally sufficient to establish a general usage among the banks of the city of Baltimore, nor a particular usage as to the Citizens' National Bank alone in relation to the presentation for acceptance, at any time before maturity, of time drafts, discounted by them, of such general, uniform, certain and notorious character as to justify the jury in inferring that such usage entered into the contract between the plaintiffs and the defendant, for the discounting of the draft offered in evidence.

And the Court gave the following additional instruction to the jury:

If the jury find from the evidence that the draft in controversy was discounted by the defendant for the plaintiffs, as partners, trading as J. W. Grafflin & Son, on the 5th of June, 1867, and was forwarded by the defendant to be presented to the drawee for acceptance, and was presented on the 22d day of July, 1867, to the said drawee, who refused to accept the same, and that said draft was protested for non-acceptance on said 22d day of July, of which non-acceptance and protest

for non-acceptance the plaintiffs had no notice; and if the jury shall further find that the said draft, not having been paid at maturity, was returned to the said defendant, and that the said defendant, in anticipation of the return of said draft, gave notice to the said plaintiffs that the said draft had been protested for non-payment, and requested them to deposit funds with the said defendant to meet the said draft on its return, which the said plaintiffs did by depositing with the said defendant $2,670.77, and on the 5th September, 1867, paid the defendant for said draft and expenses, the sum of $2,542.90, and that at the time of making the said deposit and payment, the said plaintiffs were in fact ignorant that said draft had been refused acceptance and had been protested for non-acceptance on the 22d day of July aforesaid, and made the said deposit and payment by reason of such ignorance, and immediately after discovering the facts of which they were thus ignorant, reclaimed from the said defendant the sum so paid; then the said plaintiffs are entitled to recover a verdict against the defendant for $2,542.90, with interest in the discretion of the jury from the 5th day of September, 1867.

And thereupon the plaintiffs with leave of the Court, after the foregoing prayers had been argued and the jury instructed thereon, offered a second prayer as follows:

If the jury shall find from the evidence that the plaintiffs have for some years past been constant customers of the defendant, and as such have from time to time and very frequently, during their whole course of dealings with the defendant, had discounted by the defendant time drafts of the character of the draft in controversy in this case, and that in all such dealings the defendant has uniformly and habitually sent forward the said drafts for acceptance without delay, then the plaintiffs were justified in expecting from the said course of dealings that the draft in question would so likewise be sent for-

ward, and in relying upon the defendant so to send it forward accordingly.

Which the Court refused for the reasons following:.

I refuse the instruction asked in this prayer upon the ground that the defendant not being bound by the general principles of law to send the draft forward for acceptance before the maturity thereof, and there being no sufficient evidence of a general custom of the banks of the city of Baltimore, nor of a particular custom of the Citizens' National Bank to change the operation of the said general principles, and there being no evidence that the dealing of the plaintiffs with the defendant on the subject of drafts of this character had been carried on under any understanding or agreement that the bank would be obliged to send forward such draft as a matter of duty, and no evidence of any transaction between them in which such liability had arisen, and been admitted, the said general rule of law remains unchanged in its application to this case.

To the refusal of its prayers, and to the last instruction given by the Court, the defendant excepted; and the verdict and judgment being for the plaintiffs it appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*Robert D. Morrison and I. Nevett Steele,* for the appellant.

No evidence of custom or usage is admissible to change or vary a well-established rule of law. *Piscataqua Ex. Bk. vs. Carter,* 20 *N. H.,* 246 ; *Wheeler vs. Newbold,* 5 *Duer,* 29 ; *Bowen vs. Newell,* 2 *Duer,* 584 ; *Dewees vs. Lockhart,* 1 *Texas,* 535 ; *Hone vs. M. Ins. Co.,* 1 *Sandf. S. C. R.,* 137 ; *Perkins vs. Frank. Bk.,* 21 *Pick.,* 483 ; *Allegro vs. Md. Ins. Co.,* 2 *G. & J.,* 136 ; *Foley vs. Mason,* 6 *Md.,* 37 ; *Murray vs. Spencer,* 24 *Md.,* 524.

Even if evidence of usage were admissible for the pur-

pose for which it was offered, the evidence in this case was inadmissible as not showing, and not tending to show, the existence of a general, uniform, certain and notorious usage among the banks of the city of Baltimore *and those dealing with them* in the discounting and forwarding for acceptance drafts such as that offered in evidence by the plaintiffs. The proof offered simply showed that each of the banks was in the habit of forwarding such drafts promptly for acceptance.

The defendant's first, second and third prayers were improperly rejected, for the reason, among others, that there was no evidence of the want of due notice to the plaintiffs of the protest of the said draft for non-acceptance.

The evidence offered to prove the want of notice, goes only to the extent of proving that Jacob W. Grafflin never *received* notice, and that the clerk never knew or heard of any notice having been received.

It is contended, however, that proof of the non-receipt of notice by the plaintiffs in this case shifted the burden of proof to the shoulders of the defendant. This cannot be so. It is of the very essence of the plaintiffs' case that they should establish a negative, and there is no hardship in requiring them to disprove that which would be sufficient for the defendant to prove were it suing the plaintiffs as endorsers. The plaintiffs were in possession of the draft, with the protest for non-acceptance attached, from the 5th day of September, 1867, until the 21st day of December, 1868. They were thus apprised of the residence of the notary who protested the draft, and could as easily have proven by him that notices were *not* mailed, as the defendant could have proven that they *were* mailed, if such had been the fact. *Murray vs. Haggerty*, 15 *La.*, 268; *Bowman vs. McElroy*, 15 *La.*, 663; *Adams vs. His Creditors*, 14 *La.*, 454; *Skipmith vs. His Creditors*, 19 *La.*,

198; *Treat vs. Orono,* 26 *Maine,* 217; *G. W. R. Co. vs. Bacon,* 30 *Illinois,* 347.

This is an action for money had and received, and the plaintiff cannot recover unless it be shown that the defendant cannot in conscience or equity retain the money sued for. *Green vs. Stone,* 1 *H. & J.,* 405; *Morris vs. Tarrin,* 1 *Dallas,* 158; *U. S. Bk. vs. Bk. of Georgia,* 10 *Wheaton,* 345.

It is perfectly manifest that in this case the defendant could in equity and justice retain this money.

*M. R. Walter* and *S. Teackle Wallis,* for the appellees.

The Court's instruction given in lieu of the plaintiffs' first prayer was clear law, and gave the defendant even more than it was entitled to, by requiring the jury to find that the plaintiffs had no notice of non-acceptance or protest therefor.

It went upon the ground, that whether the bank was bound or not by the general rule of law, or by the local custom to send forward drafts of the character of that in question, to be presented for acceptance prior to maturity, it was, at all events, bound to give notice, if such drafts were in fact sent forward and acceptance was refused. This is expressly declared in *Whiteford vs. Burckmyer & Adams,* 1 *Gill,* 149; *Story on Bills, sec.* 228; 1 *Parsons on Notes and Bills,* 337; and see *Watson vs. Tarpley,* 18 *Howard,* 519.

The *onus* of showing notice personally served, or placed in the mail in proper time, was on the defendant and not on the plaintiffs by the general rule of law. *Walters & Harvey vs. Brown,* 15 *Md.,* 285.

And if the burden was at all shifted in this case to the shoulders of the plaintiffs, by the fact of their having paid under an alleged mistake, it was only to the extent of showing the mistake alleged. But they went farther, and showed affirmatively that they had never received any

notice, and this, in connection with the absence of all proof that notice had been mailed or personally given, and the failure of the protest to recite that the notary had mailed any, was sufficient to authorize the jury to find, as they did find, that the plaintiffs had no notice. With this finding, and that of the other facts set forth in the prayer and also found, the right to recover was clear. It would have been error to require the jury to find that no notice had been mailed to the plaintiffs, when there was no proof tending to show that there ever had been any so mailed, and the proof, so far as there was any, tended to show directly the contrary. *Chase vs. Taylor*, 4 *H. & J.*, 59, 60 ; *Balt. & Susq. R. R. vs. Faunce*, 6 *Gill*, 76 ; *Merchants' Bank vs. Bank of Commerce*, 24 *Md.*, 52 ; *Garland vs. Salem Bank*, 9 *Mass.*, 408 ; *Barry vs. Crowley*, 4 *Gill*, 202 ; *Genl. Stat. of Mass.*, 787.

The Court could not have granted the appellant's first and second prayers, because there was evidence of usage, which the Court ought to have sent to the jury. Indeed the instruction as to usage which was given, and to which the appellant did not except, erred in granting to the appellant more than it was entitled to. There was sufficient proof of usage to go to the jury, and it ought to have been submitted to them.

The Court committed the plain mistake of supposing that the ordinary proof of custom, which after all is only proximate, is better and of higher order than positive proof of it—in other words, that a general conclusion, depending on an induction of particulars, is not as well proven by establishing all the particulars involved in it, as by general evidence leading inferentially in that direction. *Merchants' Mutual Insurance Co. vs. Wilson*, 2 *Md.*, 239, 241 ; 2 *Parsons on Contracts*, 539, 543, 544 ; *Mills vs. Bank of N. S.*, 11 *Wheaton*, 438, 439 ; *Bank of Columbia vs. Fitzhugh*, 1 *H. & G.*, 239 ; *Bell vs. Hagerstown Bank*, 7 *Gill*, 217 ; *Bridgeport Bank vs. Dyer*, 19 *Conn.*, 137.

The defendant's first and third prayers could not have been granted, because they ask the Court to say that there was no evidence that due notice of protest for non-acceptance of the draft was not given to plaintiffs. .

Proof of no notice having been received was duly given, and this, in conjunction with the absence of all statement in the protest, and all attempt to show that notice had been in fact mailed or served, was quite enough, in any aspect of the case, to authorize the jury to find that no notice had been sent or given.

STEWART, J., delivered the opinion of the Court.

Grafflin & Son, the plaintiffs below, held the draft of J. P. McQuillen on John Currier, Jr., of Newburyport, Massachusetts, bearing date May 31st, 1867, and payable ninety days after date, at the Shawmut Bank, Boston, to their order, which was endorsed by them, and discounted for them by the Citizens' National Bank of Baltimore, the defendant below.

Before its maturity, it was presented for acceptance, and not being accepted was protested for non-acceptance.

When the draft matured it was protested for non-payment.

The bank informed the Grafflins, on the 4th of September, after the maturity of the draft, that it had not been paid, and requested them to make it good, which was done by a deposit of funds for that purpose. On the next day, the Bank sent down the draft with the protests, for non-acceptance and non-payment, and the Grafflins gave their check on the bank for the amount.

These advances of money were made by the Grafflins, as alleged by them, in utter ignorance that the draft, before its maturity, had been protested in July, for non-acceptance, of which fact they had not been informed.

So soon as they ascertained such had been the case, they promptly informed the bank that they had advanced the

money, to make good the draft, in ignorance of the facts, and demanded the return of the money they had so paid. The bank refused to return the money.

This action was brought to recover back the money, paid under such circumstances, and the verdict and judgment being against the bank, it has brought up this appeal.

Exceptions were taken by both parties to the rulings of the Court.

The plaintiffs below excepted to the refusal of the Court to grant their first and second prayers, and to the Court's instruction on the subject of usage. The defendant excepted to the refusal of the Court to grant its five prayers, and to the second instruction given by the Court.

The first prayer of the plaintiffs below was properly refused, because it asserted that the fact of the ignorance of the plaintiffs of the non-acceptance and protest of the draft in question, was sufficient to entitle them to recover.

Upon the non-acceptance and protest of the draft in July, when it was presented, before its maturity, if due notice of the fact had been placed in the post-office, addressed to them, such notice would have been sufficient.

Whether the plaintiffs actually received the same or not was immaterial, because the holder of the draft would have discharged its duty by giving notice in the manner aforesaid.

The second prayer of the plaintiffs was properly rejected.

Because the plaintiffs had been constant customers of the bank, which had discounted for them many like drafts, and immediately sent them on for acceptance, when the law did not require it, was no just reason to compel the bank, at the risk of being held liable for negligence, to pursue a similar course in the future.

The concession of such a favor, although repeated in sundry instances, ought not to be construed to operate as imposing upon the bank the imperative duty of its con-

stant repetition, and as conferring upon the plaintiffs the absolute right to demand, and insist upon its continuance. However much the plaintiffs might be disappointed in their expectations upon the subject, the legal relations of the parties were not changed thereby.

If such transactions between parties could be interpreted as changing or modifying the well-established rules of law, the necessary effect of such a theory would be to make the business habits of the parties, however unreasonable or preposterous, the standard to govern their contracts, in the place of the provisions of the law.

Under such a state of things, questions might constantly arise as to the number of the repeated acts, between the parties, necessary and competent to establish usage sufficient to waive or suspend the uniform rules of law, otherwise applicable to their dealings.

Courts of justice, in place of expounding the law, would be continually occupied and perplexed in the ascertainment of the special law the parties had adopted to be applied to their transactions.

Is it not infinitely better that the law should be established and recognized as the guide, and have its uniform application, and that parties in their diversified dealings should be regulated and governed by its wise and exact operation?

The defendant's first and third prayers were properly rejected, because they asserted that no evidence had been given of the want of due notice to the plaintiffs of the protest of the draft for non-acceptance.

Evidence had gone to the jury, tending to show that notice of that fact had not been given to the plaintiffs.

There is no cause of reversal as to the refusal of defendant's second prayer, because it had substantially the benefit of the law claimed by that prayer, in the Court's instruction to the jury.

The defendant's fourth and fifth prayers were correctly refused.

If the jury were satisfied from the evidence that the plaintiffs paid the money to redeem the dishonored draft, under the circumstances described in the testimony, through inadvertence, mistake, or in ignorance of the facts in the case, but about which they might have better informed themselves by an inspection of the papers left with them by the defendant, still the plaintiffs are not to be held absolutely bound and concluded by such recognition of the claim.

If the error or mistake exists, or is shown to have occurred, or the plaintiffs paid the money believing the facts to be different from what they actually were, and they were in truth not bound to have paid the money, they are entitled to have the same refunded, if duly diligent in giving notice of the mistake. Whilst "a party cannot recover money voluntarily paid, with a full knowledge of all the facts, although no obligation to make such payment exists, yet a payment cannot well be said to be made voluntarily when made in consequence alone of a false view of the facts. The assent is only induced by the conviction then prevailing in the mind, that the particular facts existed, and is scarcely to be distinguished from an assent or agreement to pay on the condition the facts did exist."

Where the plaintiff's right to have the error rectified is made out, the legal relations of the parties stand unaffected by anything done in ignorance of the facts. "The subsequent discovery of the error destroys the whole basis of the agreement, and the parties are restored to their original condition and rights."

If the jury were satisfied from the evidence that the plaintiffs paid the money in question, in ignorance that the draft had been presented in July and was not accepted, and protested for non-acceptance, and if in fact no notice was duly given to them through the post-office or otherwise,

they are entitled to recover it back.  *B. & S. R. R. Co. vs. Faunce & Passmore,* 6 *Gill,* 68.

We concur with the ruling of the Court in its first instruction, that there was no sufficient evidence of any usage prevailing with the banks in the city of Baltimore, or the Citizens' National Bank, the defendant here, to justify the jury in inferring that such usage entered into and made part of the contract between the parties in relation to the draft in question.

To permit usage to govern and modify the law, in relation to the dealings of the parties, it must be uniform, certain, and sufficiently notorious to warrant the legal presumption that the parties made their contract with reference to the usage, and not according to the general and established law applicable to the case.

The evidence for such purpose should be very strong and conclusive to authorize the usage, to regulate and control the contract between the parties, in derogation of the established law.

The testimony advanced in this instance, however definite as to the character of the usage in question, was not sufficient to show that it was a general and notorious usage, without which it could not furnish the criterion by which to determine and adjudicate the relative rights of the parties, in conflict with the general law upon the subject.

The Court's second instruction, in that part of it where the language " had no notice " is employed, was calculated to mislead the jury.

If notice of the protest of the draft for non-acceptance was duly sent by mail, although never received by the plaintiffs in point of fact, such notice was all that was required to be given, on the part of the defendant, in discharge of the duty imposed upon it in relation to the draft.

But the jury, from the phraseology of the instruction and the use of the terms " had no notice," may have under-

stood it as instructing them to find for the plaintiffs, if they believed from the evidence the plaintiffs had in fact received no notice, or had no actual knowledge of the non-acceptance of the draft and the protest thereof.

Under this view of its character and tendency, the instruction was erroneous, and we must reverse the ruling and send the case back for a new trial.

*Judgment reversed and procedendo awarded.*

(Decided 15th December, 1869.)