BANK OF COLUMBIA *v.* FITZHUGH.—1827.

———— ⊛ ————

THE BANK OF COLUMBIA *vs.* FITZHUGH.—June 1827.

A drew a note dated at G, and there payable 60 days after date, in favour of B, or order, who endorsed it to the plaintiffs, by whom it was discounted. On the first day, after the third day of grace, payment was demanded of this note of A, who not paying it, notice of its dishonour was sent by post to B, who did not then, nor when he endorsed the note, reside at G. It appeared that it had been the universal practice of banks and merchants at G, for 20 years, to present negotiable notes due and unpaid to the drawer for payment, on the fourth day of grace; that such usage was of public notoriety, and that the demand and notice above mentioned were in conformity thereto—*Held,* that B's contract was to be considered as made in reference to this usage; that both he and the drawer looked to the place where the money was to be paid, and the contract performed, and must be presumed to have known this usage, and he was, therefore, liable as endorser.

A usage of universal prevalence becomes a part of the existing law, and is to be noticed *ex officio* by the courts of justice; but a particular usage has a circumscribed and limited application, and must be supported by proof. Where it is well established, it is as obligatory on the objects of its operation as the general law.

Usage enters into contracts, becomes a part of them, and must be regarded in their interpretation.

Special usages control and govern the general law repugnant to them.

APPEAL from *Washington* County Court. This was an action of *assumpsit* brought in the names of the *President, Direc-*

tors and Company, of the Bank of Columbia, (now appel-
lants,) against the appellee, upon a promissory note drawn by
Samuel Fitzhugh at George Town, in the District of Columbia,
on the 31st of March 1818, for $2500, and payable, sixty days
after date, to William Fitzhugh, junior, (the appellee,) or or-
der, and by him endorsed to the plaintiffs. The declaration con-
tained but one count on the said note, in which the plaintiffs aver,
that at the end of the 60 days, to wit, on the 3d of June 1818,
they presented the note to, and demanded payment of, the said
Samuel Fitzhugh, &c. The general issue was pleaded.

At the trial the plaintiffs offered in evidence the following
promissory note:

"Doll. 2500.               Geo. Town, March 31, 1818.

Sixty days after date I promise to pay William Fitzhugh,
junr. or order, twenty-five hundred dollars, value received, ne-
gotiable at the Bank of Columbia.

Saml. Fitzhugh."

Endorsed: "Pay to The President, Directors and Compa-
ny, of the Bank of Columbia.

Wm. Fitzhugh, junr."

The defendant admitted that the endorsement on the note
was his proper handwriting. The plaintiffs proved, (under a com-
mission,) that payment of the note was demanded of the maker
on the 3d of June 1818, who did not pay it, and that a notice
to the endorser was on the same day, after the demand and re-
fusal aforesaid, put into the post office at George Town, direct-
ed to him at Hager's Town, Maryland, where he resided;
and it was admitted that the defendant, at the time he endors-
ed the said note, and when it became due, and was protested,
was not a citizen of George Town, or the District of Columbia,
but was at the said times respectively, and still is, a citizen of
this state, residing in Washington county. A variety of other
testimony was taken under the commission which issued to the
District of Columbia, which went to establish, that there had
existed at George Town from the year 1793, to the date of
the note, a practice among banking corporations, merchants, and
dealers in negotiable paper, of demanding payment of unpaid
notes and bills, on the fourth day after the time limited for pay-

ment, according to the terms of the note or bill had terminated, on which fourth day it was the practice to give notice to the endorsers, of the nonpayment thereof. That such practice was generally known, and almost universally prevailed among men of business at *George Town*; that persons who paid their notes on the fourth day of grace, maintained their credit as punctual men, though some punctual men paid their notes on the third day of grace; that about the 20th of June 1818, a different practice began to prevail, the validity of demanding payment from the maker of a note, on the fourth day of grace to bind the endorser, being then questioned; and some of the banks had payment of notes demanded, and notices to endorsers given, both on the third and fourth days of grace. That prior to that time no bank in *George-Town*, or in *Washington*, in the said district, where a similar practice had prevailed, was known to have a different practice, though there were some exceptions in practice from the banks in *Baltimore*, transmitting notes for collection, giving orders to have such notes protested on the third day of grace. The plaintiffs then prayed the opinion of the court, and their direction to the jury, that if they shall find from the evidence, that from the year 1798, up to the time when the note offered in evidence became due, it was the established usage and practice of the Bank of *Columbia*, and that it was the usage and practice of all the other banks in *Washington* county, in the District of *Columbia*, from the times they respectively went into operation, until and at the time the said note became due; and that it was the universal practice of merchants in the said county, to present negotiable notes, that were due and unpaid, to the drawer, for payment on the fourth day, *i. e.* the day after the third day of grace; and that such usage and practice was of public notoriety, and familiarly known to all merchants, traders, dealers and customers, in the said county; and, that the negotiable note offered in evidence was presented for payment to the drawer, and notice given to the defendant as endorser thereof, according to the said usage and practice, that then the plaintiffs were entitled to recover. Which opinion and direction, the Court [*Buchanan*, Ch. J. and *Shriver*, and *T. Buchanan*, A. J.] refused to give. The

plaintiffs excepted; and the verdict and judgment being against them, they appealed to this court.

The cause was argued at the last June term, before EARLE, MARTIN, STEPHEN, and DORSEY, J.

*F. S. Key*, for the Appellants. This case is similar to that of *Raborg vs. The Bank of Columbia, (ante 231,)* and the arguments used there are applicable to this case. The decision of the Supreme Court of the *U. S.* in *Renner vs. Bank of Columbia,* 9 *Wheat.* 582, and *Mills vs. The Bank of the United States,* 11 *Wheat.* 431, and of this court in *The Bank of Columbia vs. Magruder,* 6 *Harr. & Johns.* 180, have established the lawfulness of the usage in the District of *Columbia,* of demanding payment of a promissory note on the fourth day after it falls due, in all cases coming within the sphere of its operation. So that the only question remaining is—Does the contract of the parties in this case come within the operation of that usage? It will be contended for the appellants that it does. The question, whether the usage is to prevail or not, is to be decided by ascertaining whether the parties looked to the performance of the contract *within the place* where the usage prevailed. For this see *Robinson vs Bland,* 2 *Burr.* 1078. *Ludlow vs Van Rensselear,* 1 *Johns. Rep.* 94. *Renner vs Bank of Columbia,* 9 *Wheat.* 588. *Chitty on Bills,* 273, 271, (ed. of 1817,) 337, 340, (ed. of 1821.) The endorsing a note is like the drawing of a bill by the endorser on the maker in favour of endorsee. *Chitty,* 336, (ed. of 1817.) And where a bill is drawn on a man in another place, the usage of *that place* is to prevail, and the drawer is bound by such usage. Still more as an accommodation note intended by the parties to be discounted *at a particular place,* which shows that the parties looked to a performance there. Still more when the note, as here expressed upon its face, that it is "negotiable at the *Bank of Columbia.*" *Yeaton vs Bank of Alexandria,* 5 *Cranch,* 49. *Mandeville vs Union Bank of George-Town,* 9 *Cranch,* 1. *Bank of Columbia vs Okely,* 4 *Wheat.* 243. Again, it will be contended that the note must have been dealt with according to the usage, or the maker could

not have been in default, and consequently the endorser could not have been held liable. And, therefore, the endorser's contract was—"Deal with this note so as to put the maker in default, and I will be liable." If this was not his contract, he made no contract to be liable in any way. As to the construction of such contracts, see *Chitty on Bills,* 118. Compliance with the usage was therefore a necessary part of the contract, and the defendant is presumed to know it. That this knowledge is presumed, and that no proof of actual knowledge is necessary, is shown by the following cases: *Cutter vs Powell,* 6 *T. R.* 320. *Yeaton vs Bank of Alexandria,* 5 *Cranch,* 49. *Noble vs Kennoway,* 2 *Doug.* 511. *The Bank of Utica vs Smith,* 18 *Johns. Rep.* 230. *Chitty,* (in *note,)* 352, 334. *Halsey vs Brown,* 3 *Day,* 346. *Robson vs Bennett,* 2 *Taunt.* 388. *Chitty,* 271, 273, (ed. of 1817.) 337, 340, (ed. of 1821.) *Jackson vs Union Bank of Maryland,* 6 *Harr. & Johns.* 146. *Vallance vs Dewar,* 1 *Campb.* 503, 508. *Allegre vs Maryland Insurance Company,* 6 *Harr. & Johns.* 408. In none of which cases was a knowledge of the usage by the party thought necessary to be proved. In the case of *Allegre vs Maryland Insurance Company,* this court decide that evidence of a usage prevailing in the insurance offices of *Baltimore* is admissible to explain the contract of a party, neither charged nor proved to have any knowledge of the usage. So that the only difference between this case and those of *Renner vs Bank of Columbia,* and the *Bank of Columbia vs Magruder,* is, that there was *actual knowledge admitted,* and *here* the same knowledge is *necessarily presumed.*

*Taney,* for the Appellee. The drawer of a note is answerable, whether there be a demand or not. The special custom is intended to operate against the endorser. The general rule is, that a note payable 60 days after its date, is due on the 63d day, and expounded as if so written. The usage assumed does not profess to give an interpretation of the note that it is payable on the 64th day. The usage proved is to demand on the *fourth* day, and to give notice to the endorser on that day. The proof in the cause is that punctual men paid their notes on the *third* day. The plaintiffs' prayer to the court below did

not go to the note, but only to the usage. The note is admitted to have become due on the third day; yet the usage is to demand payment and protest on the fourth. It was not put to the jury to say when the note became due. The whole effect of demand and notice is to make the endorser liable. Admit that this case is similar to that of *Mills vs Bank of the United States*, 11 *Wheat*. 431, yet this court is not bound by the decision in that case. Some decisions of the supreme court are binding upon this court; but that is not one of those cases. The laws of this state, passed before the grant of jurisdiction over the District of *Columbia*, to congress, govern in *Washington* county of that district, except where altered by congress. By that law the endorser of a note is not liable unless certain acts are done; one of which is, that demand of payment from the maker be made on the third day after the note becomes due. This is the general law of the commercial world. *Lennox vs Roberts*, 2 *Wheat*. 377. Every person is bound to know the general law; and in the absence of proof of a different law, brought home to him, he is not bound by it. The endorser undertakes conditionally. Although the note is made negotiable at the *Bank of Columbia*, yet it need not have been negotiated there. It might have been negotiated in this state; and if it had been discounted here, could it be subject to the usage in the District of *Columbia?* Would the endorser be bound differently if the note was discounted at the *Bank of Columbia*, than he would be, if discounted at any bank in this state? The legal exposition of the contract is matter of law to be decided by the court, and usage must be proved as part of the law. When a usage becomes general and universal, then it becomes a part of the law. It does not depend upon a usage being ancient or modern. No usage is to be noticed unless it becomes a part of the law; and it is to be judicially known when it becomes universal and general. By the law of this state the liability of the endorser is conditional. It is implied by law, that there must be demand of payment from the drawer on the last day of grace, and notice sent to the endorser by the mail on the next day. *Lenox vs Roberts*, 2 *Wheat*. 377. *Chitty on Bills*, 315. The custom in the District of *Columbia*, as assumed, is a custom affecting the endorser and not the drawer. The depositi-

ons of the witnesses state it to be variant. Some of the merchants paid their notes on the third day, and some on the fourth. By the general law the endorser is liable on the third day. Can a custom different from the general law bind an endorser without his consent? It is a custom differing from the law, and dispenses with the law for the benefit of the drawer, and not for the endorser. This note was negotiable at the *Bank of Columbia,* and it became liable to the short process of that bank, given under the act of 1793, *ch.* 30, *s.* 14; of this the endorser is presumed to have knowledge; but not of any new custom. That was the only object of the words "*negotiable at the Bank of Columbia,*" inserted in the note. The usages mentioned in the cases cited by the appellants' counsel were not inconsistent with the rule of law. As to notice, &c. see *Chitty on Bills,* 277, 355, (ed. 1821.) The rule is, that the demand must be made during the hours of business. This is not a usage in opposition to law, but it is consistent with the law. The same rule is as to the fourth of July. The usage in *Jackson vs The Union Bank of Maryland,* 6 *Harr. & Johns.* 146, is consistent with law. It is a lawful usage. The decision in *The Bank of Columbia vs Magruder,* 6 *Harr. & Johns.* 180, went upon the principle of a waiver. There the endorser being in the District of *Columbia,* consented that the demand and notice should be on the fourth day. This would bind him independent of a custom; it being his contract in dealing with a bank accustomed to demand payment on the fourth day. Besides, he had knowledge of the usage; and his knowledge and conformity to the usage stands upon contract to be bound by the custom. Knowledge of the custom must be brought home to the endorser, and it then enters into the essence of the contract. If demand of payment is made on the third day, and notice by the mail on the fourth day to the endorser, the holder of the note might recover notwithstanding the custom. The usage does not abolish the law. By conforming to the law it will enable the party to recover in opposition to the custom. The usage cannot repeal a law. It is not the *lex loci* of the District of *Columbia;* but is a mere matter of contract between the banks, and their customers, in the district. The plaintiffs' prayer to the court below does not

put it to the jury, that the plaintiffs could not recover on the note on the third day if it was not then paid. If the principle contended for by the appellants' counsel is to prevail, every petty village in the state may have a custom of its own; and the doctrine upon promissory notes will no longer be fixed and settled.

*F. S. Key* in reply. It is not contended that the usage subverted the law; but that it enters into the contract, and forms a part of it. How did the three days of grace become a principle of law? By the usage entering into the contract. The person is presumed to have assented to the usage. All dealers in promissory notes are considered as merchants, and are brought within the usage, and are presumed to have consented to the three days of grace. In this case the only question is, whether the party knew of the usage, or was in a situation to know it? And it has been shown, it is believed, that he did know it, or was bound to know it. Suppose the note had been negotiated at any other bank, still it must be demanded of the drawer who resided in *George Town*, or whose agent resided there. It was the contract of the drawer, and it was to be dealt with as such.

*Curia adv. vult.*

EARLE, J. at this term, delivered the opinion of the court. This is a suit on a promissory note, brought in *Washington* county court by the appellants against the appellee, who endorsed the same. The note was given on the 31st of March 1818, by *Samuel Fitzhugh*, of the District of *Columbia*, to *William Fitzhugh* junr. of *Washington* county in this state, for $2500, payable to him, or his order, 60 days after date, and negotiable at the *Bank of Columbia;* and being endorsed to the bank, it was discounted for the accommodation and use of the maker. At the trial of the case the note was offered in evidence to the jury, the endorsement of *Wm. Fitzhugh* junr. on the same being admitted to be of the proper handwriting of the defendant. And it was proved by the plaintiffs, under a commission, that payment of the note was demanded of *Samuel Fitzhugh*, the drawer, on the third day of June 1818, being the day after the three days of grace, and the same was refused by him, and that notice of nonpayment was given to *Wil-*

*liam Fitzhugh* junr. by a letter deposited in the post office at *George Town*, directed to *Wm. Fitzhugh* junr. *Hager's Town*, *Maryland*, dated and deposited in the post office on the said third day of June 1818. The plaintiffs further proved under the commission, that it had been the constant and almost undeviating practice and usage of the *Bank of Columbia*, from its first establishment in 1793, until after this note became due, to demand payment on the day after the three days of grace, and to give notice of nonpayment to the endorsers on the same day; that a similar usage had prevailed for many years in all the banks in *Washington* and *George Town*; and that the same was of public notoriety, and universally and familiarly known to all merchants, and others, of *Washington* county, in the District of *Columbia*, where the said banks were established. And it being admitted that the defendant, at the time he endorsed the note, and also at the time the same became due, was not a citizen of *George Town*, in the District of *Columbia*, but that the said defendant was, at the times above mentioned, a citizen of this state, residing in *Washington* county, the plaintiffs, by their counsel, prayed the opinion and direction of the court to the jury, that if they should find, from the evidence in the cause, that from the year 1798 up to the time the note offered in evidence became due, it was the established practice and usage of the Bank of *Columbia*; and that it was the usage and practice of all the other banks in *Washington* county, in the district, from the time they respectively went into operation, until and at the time the said note became due; and that it was the universal practice of merchants in the said county to present negotiable notes that were due and unpaid, to the drawer for payment, on the fourth day, *i. e.* on the day after the third day of grace; and that such usage and practice was of public notoriety, and familiarly known to all merchants, traders, dealers and customers, in the said county; and that the negotiable note offered in evidence was presented for payment to the drawer, and notice given to the defendant, as endorser thereof, according to the said usage and practice, that then the plaintiffs were entitled to recover. The court refused this opinion and direction, and their refusal gave rise to the exception, the matter of which we are now to revise and consider.

This usage of the Bank of *Columbia* of demanding payment on the fourth day, has been recognized in this court on a former occasion, in the case of the *Bank of Columbia vs Magruder,* 6 *Harr. & Johns.* 172, as a reasonable and legal usage, the evidence of which should be received, to come at the understanding of parties in their contracts, which are made with reference to the usage. And it was determined, by that case, to be of the essence of the contract, and to constitute a part of it although not expressly incorporated in it, where it was personally known to the party. This decision was given upon the case submitted, which was most streneously urged on the ground of knowledge brought home to the defendant; and however strong its expressions are, it was not its object to touch any other subject than the one considered; and it was by no means its view to close the door against the question now raised, which we understand to be, whether, without actual knowledge, the usage is binding on the appellee who endorsed the note to the Bank of *Columbia?*

A usage of universal prevalence becomes a part of the existing law, and is to be noticed *ex officio* by the courts of justice; but a particular usage has a circumscribed and limited application, and must be supported by proof. Where it is well established, it is as obligatory on the objects of its operation as the general law. The usage under our notice is of this fixed and established character. It is of great notoriety, and long standing; is recommended by its uniform and unvaried operation; and has the sanction of the judicial tribunals of the country. For years back it has been made to bear on merchants and others dealing with the bank; and the first inquiry is, whether the appellee's acts have brought him within the sphere of its operation? And we are strongly inclined to think they have. The note, made negotiable at the bank, was endorsed by him for the accommodation of the maker, and he appears to us as much identified with the negotiation, and to have become as much a dealer at the bank, as if he had endorsed it for value received. His remote situation makes no difference, as the transaction brings him in contact with the institution, and he and the drawer have both to look to the district as the place where the money is to be paid, and the contract to be performed. If for the pur-

poses of this decision the appellee is to be viewed in the light of a dealer with the bank; the next and more important inquiry is, is he bound to take notice of the usage, and will the law presume his knowledge of it? The argument is, that he is placed in a situation to know, and is therefore presumed to know. There are usages analogous to this, which have been resorted to in the interpretation of contracts, where it will be found from the authorities, the party has been deemed to be bound without personal or special knowledge. Such, among others, is the case of *Noble vs Kennoway*, 2 *Doug.* 511, where the distinguished judge, who pronounced the opinion of the court on the construction to be given to a policy of insurance, is represented to say, "every underwriter is presumed to be acquainted with the practice of the trade he insures; and that, whether it is recently established or not. If he does not know it, he ought to inform himself; it is no matter if the usage has only been for a year."

The case of *Vallance vs Dewar*, 1 *Camp.* 503, is to the same effect. The action was upon a policy; and in giving it an interpretation, Lord *Ellenborough* adjudged, that a usage which was notorious must be presumed to be equally within the knowledge of both parties; and if a usage be general though not uniform, the underwriters are bound to take notice of it.

There was a case decided in the supreme court of *New York*, in the year 1820, which bears a yet closer analogy to the case we are considering, inasmuch as it relates to the demand of payment of promissory notes. It is the case of the *Bank of Utica vs Smith*, and is reported in 18 *Johns. Rep.* 230. The note was made payable at the *Mechanics' Bank* in the city of *New-York*, and payment was demanded within a quarter of an hour after 3 o'clock, P. M. which is the time for closing the bank as to ordinary business. This supposed irregularity was seized on, among others, to defeat the claim, and the defendant bottomed himself on the undeniable general position, that presentments for payment must be made at a bank, where it is the appointed place of payment, during the regular hours of business. To this was opposed the usage of the *Mechanics' Bank*, whose course of doing business was to allow 15 minutes after banking hours for the presentment and payment of notes. It

was contended by counsel, that the usage was not sufficiently shown, that it ought to be proved and brought home to the knowledge of the defendant; but it was notwithstanding decid-ed by the court, that the bill was properly presented at the bank for payment, and although it was near a quarter of an hour after the usual time for closing the bank as to other business, it was yet within bank hours, the 15 minutes being the accus-tomed time for such presentments, and of the course of busi-ness at the bank, the defendant being the endorser, ought to have informed himself. His admitted residence was at *Peter-borough, Madison* county, in the state of *New-York.*

But it was earnestly pressed upon us, on the argument, that the usage of the *Bank of Columbia* is entirely unlike the usages which were decided on in the cases above mentioned, because it is directly repugnant to the general law of the district. By that law, which is the law of this state, demand is made on the third day of grace, and not on the day after the third day. We have to confess we cannot perceive that this argument has much force in it. We have already determined, that the con-tract with the bank, is not made with a reference to the exist-ing law, where the party has a personal acquaintance with the custom; and we think it will be no great stretch of the adjudi-cation to say, that the contract is not made in reference to the general rule, where the particular rule is *presumed* to be in the knowledge of the party; if in the first case, so in the last, the usage enters into the contract, and becomes a part of it, and must be regarded in the interpretation of it. Direct authorities, however, are to be found, where the particular custom has been determined to prevail over the existing law, although in terms opposed and repugnant to it. The case of *Cutler vs Powell,* 6 *Term. Rep.* 320, is of this description. The suit was upon a promissory note given to the mate of a ship for a certain sum of money, provided he proceeded on his voyage, and continued to do duty to the port of destination. He died on the voyage, and agreeable to the principles of the common law, it was clear that nothing was due on the note, as he did not continue to do duty to the port of destination. An inquiry, nevertheless, into the usage in such cases, was directed to be made by the court; and all the judges expressed a willingness to sanction an allow-

ance for the time the service was performed, if the usage would warrant it.

A case still more to the purpose on this point was decided in the year 1809, in the supreme court of errors in the state of *Connecticut, Halsey vs Brown*, 3 *Day's Reports*, 346, where *assumpsit* was brought against the owners of a brig for certain gold and silver coins shipped on board, to be transported and delivered to a mercantile house in *New-London*, for which a bill of lading was given by the master in the usual form. On the trial of the general issue, the ship owners, to repel their liability, gave evidence of a usage or custom that the freight of money received by the master of a vessel was his perquisite; that he was to be compensated for the transportation of it, and not the owners of the vessel, and that the contract was considered as being personal, and of individual obligation, but not as the contract of the owners. This evidence was objected to, but suffered by the court to go to the jury, and the defendants obtained a verdict; on a motion for a new trial it was forcibly argued, that the law rendering the owners liable for goods received by the master to be transported, was the settled law of the state; that the contract of the master was the contract of the owners; his nondelivery was their nondelivery; and that the maxim *respondeant superiores* well applied.

The court stated the true question to be, whether evidence of a particular custom or usage could be given in evidence to control the general law; they admitted, that by the general law owners of vessels were answerable for the contracts of their masters; but they said it may be controlled by a special local usage, so far as that usage extended, which would operate on contracts made in view of or with reference to it; and they refused a new trial. It is believed many other cases might be produced where special usages have been decided to control and govern the general law repugnant to them; but the court are fully satisfied on the point, and deem it unnecessary to multiply references to authorities.

It is their opinion, that the defendant is placed in a situation to be acquainted with the above usage of the *Bank of Columbia*, and must be presumed to know it; and that his contract is to be considered to have been made in reference to the

usage, and not to the general law, which confines the demand of payment to the third day.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.