OWEN PATTERSON *vs.* ISAAC S. CROWTHER and ROBERT C. BOONE, trading as CROWTHER & BOONE.

*Usage—Contract—Evidence—Competency of Witness.*

A usage of universal prevalence becomes a part of the existing law, and is to be noticed *ex officio* by Courts of justice; but a particular usage has a circumscribed and limited application, and must be

supported by proof. Where it is well established, it is as obligatory on the objects of its operation as the general law.

But unless it is of such great notoriety that knowledge and adoption of it may be presumed, it must be proved to have been known to the party whose contract is to be brought within its operation.

Where a contract specifies a mode or system of measurement, it is not competent to vary or contradict it by evidence of a custom; but usage is admissible to interpret a contract and to ascertain the meaning of the parties, where it can be done without violence to the terms used.

C. & B. contracted with P. to build a stone wall in Baltimore County, according to certain drawings and specifications, and the character of the work and materials was specially described in the contract. The price was stipulated to be "the sum of four dollars and fifty cents per perch complete." In an action brought by C. & B. against P. to recover for said work, evidence was offered that "there existed in Baltimore City and County a certain well known custom among stone-masons and builders, known as 'masons' measure,' whereby stone-masons are entitled to claim, in the measurement of work done by them, not only the actual solid contents of a wall or structure built by such masons, but credit for all openings, such as windows, &c., in the same manner as if the same were solid masonry; also, that according to said custom such stone-masons were entitled to charge for all such masonry, when built in a circle or curve, fifty per cent. additional, or one and a half times the actual amount of masonry contained in such circular or curved wall or other masonry work." On exception it was HELD:

1st. That said evidence was admissible.

2nd. That if the usage was known to P. it entered into the contract and became a part of it. and must be regarded in the interpretation of it.

3rd. That although P. was not presumed to know the custom, the plaintiffs had a right to offer it in evidence as a competent part of their proof.

4th. That the plaintiffs had a right, after proving the custom, to show that it was known to P. if they had evidence to show such knowledge; but the proof of the custom could not have been rejected because they did not state that they intended to follow it up with evidence of such knowledge.

Patterson *vs.* Crowther & Boone.

A witness proved that he measured the stone work in question according to "masons' measure," and "that he did not, at the time of making the measurement or calculations, nor at any other time, have in his possession, or before him, the drawings and specifications for the erection of said wall, but that, at sometime subsequent to the measurement of said wall, he obtained a part of the drawings, from which to ascertain the contents or measurement of certain portions of said work, which he could not see at the time of making his measurements." On exception it was HELD:

1st. That it was competent for the witness to resort to the drawings, there being evidence in the cause that the work had been done in accordance with the drawings and specifications.

2nd. That it was for the jury to attribute such value to the testimony as they believed it ought to have.

A party cannot offer all his evidence at the same moment; and when he tenders evidence legal and material to the issue it is the duty of the Court to receive it, and it cannot require him to state in advance what other proof he intends to offer.

APPEAL from the Baltimore City Court.

The appellees sued the appellant in assumpsit to recover for services the nature of which is stated in the opinion of the Court. The defendant took three exceptions, which are sufficiently stated in the opinion of the Court.

The cause was argued before ALVEY C. J., YELLOTT, STONE, MILLER, IRVING, BRYAN, and McSHERRY, J.

*James McColgan,* for the appellant.

The evidence of usage objected to directly adds a term to the written contract of the parties, which is in itself plain and unambiguous, and holds the appellant responsible for a greater amount than he had contracted for, and should not, therefore, have been admitted by the Court. *Susquehanna Fertilizer Co. vs. White & Co.,* 66 *Md.,* 454-5; *Gibney vs. Curtis,* 61 *Md.,* 200, 201, 202; *Busby vs. The North American Life Insurance Co.,* 40

*Md.*, 579; *Baltimore & Ohio R. R. vs. Green*, 25 *Md.*, 91; *Murray, et al. vs. Spencer*, 24 *Md.*, 520; *Foley. & Woodside vs. Mason & Son*, 6 *Md.*, 49; *Bank of Commerce vs. Bissell, et al.*, 72 *N. Y.*, 615-16; *The Schooner Reeside*, 2 *Sumner*, 569-70; *Atkins vs. Howe, et al.*, 18 *Pick.*, 16; *Oelricks & Lurman vs. Ford*, 23 *Howard*, 49; *Wilson vs. Bauman, et al.*, 80 *Ill.*, 495; *Insurance Co. vs. Wright*, 1 *Wallace*, 470.

Any such custom would be unreasonable, and therefore void. *Jordan, et al. vs. Meredith*, 3 *Yeates, (Pa.),* 318-20; *Sweeney vs. Thomason*, 9 *Lea, (Tenn.,)* 359.

The appellant being neither a stone-mason nor builder, and no attempt made to bring home to him any knowledge of such custom or usage, he is not bound by it. *Walsh vs. Mississippi Transportation Co.*, 52 *Mo.*, 434-438; *Wadley vs. Davis*, 63 *Barb.*, 501.

Any custom must be established, uniform, general and notorious, and no such evidence was offered in this case. *Chesapeake Bank vs. Swain & Abell*, 29 *Md.*, 499.

It must be alleged in pleading when relied upon, to warrant a departure from a written contract. *The Girard Life Ins. & Trust Co. vs. Mutual Life Ins. Co. of N. Y.*, 13 *Phila., (Pa.,)* 90.

The testimony of Chalk was wholly irrelevant and inadmissible. The contract of the parties is, that the work is to be done and paid for only *according to the drawing and specifications*, and the witness Chalk admits that he had never seen these, and had made no calculation of the amount of work required by them. 1 *Greenleaf's Ev.*, 51-52.

As his testimony showed that he had not seen and could not see the whole of the work, his calculation of the amount of work done by the appellees, based partly on his measurement of the wall, and partly on his examination of "*a part* of the drawings," must be

purely conjectural, and *non constat*, but he calculated for part of the same work twice.

*George G. Hooper*, for the appellees.

BRYAN, J., delivered the opinion of the Court.

Crowther and Boone contracted with Patterson to build the stone wall at the United States Marine Hospital along Remington Avenue in Baltimore County. The wall was to be built according to certain drawings and specifications; and the character of the work and materials was specifically described in the contract. The price was stipulated to be "the sum of four dollars and fifty cents per perch, complete." This suit was brought by Crowther and Boone. Boone testified that before commencing the work "he saw the drawings and read the specifications, and then proceeded to do the work, and did finish the same in accordance with said drawings and specifications as he understood them, and that said work when finished, was accepted by the government inspector." Evidence was then offered that "there existed in Baltimore City and County, a certain well known custom among stone-masons and builders, known as 'Masons' measure,' whereby stone masons are entitled to claim in the measurement of work done by them, not only the actual solid contents of a wall or structure built by such masons, but credit for all openings such as windows, &c., in the same manner as if the same were solid masonry; also that according to said custom such stone-masons were entitled to charge for all such masonry, when built in a circle or curve, fifty per cent. additional, or one and a half times the actual amount of masonry contained in such circular or curved wall or other masonry work." The defendant took an exception to the admission of this testimony.

We suppose that stone-masons and builders certainly have the right to establish among themselves a custom for measuring their work, and that other persons may make contracts with them in reference to the custom; if they choose to do so. We are not now called upon to inquire into the facts and circumstances which have given rise to the custom, or which may be alleged in justification of it. It is sufficient to say that there is no reason in the policy of the law, why it should not be adopted by those persons who wish to be governed by it in the dealings connected with their business. "A usage of universal prevalence becomes a part of the existing law, and is to be noticed *ex officio* by the Courts of justice; but a particular usage has a circumscribed and limited application, and must be supported by proof. Where it is well established, it is as obligatory on the objects of its operation as the general law." *Bank of Columbia vs. Fitzhugh,* 1 *Harris & Gill,* 248. Unless it is of such great notoriety that knowledge and adoption of it may be presumed, it must be proved to be known to the party whose contract is to be brought within its operation. In *Bank of Columbia vs. Fitzhugh,* 1 *Harris & Gill,* 239, on the proof in the case showing an established and notorious usage of the banks in Washington County, District of Columbia, to allow four days of grace on promissory notes, it was held that where a party endorsed a note for the purpose of being discounted at one of these banks, he must be presumed to know the usage, and that his contract must be considered as made in reference to it, and not under the general law which allowed three days of grace. In *Powell vs. Bradlee,* 9 *Gill & Johnson,* 277, this Court approved of a ruling which left it to the jury to find the fact of usage, and to decide whether the delivery of certain goods had been made in reference to it. And in regard to the custom set up in *Burroughs*

9                    · v. 70.

*vs. Langley,* 10 *Md.,* 250; a similar opinion was given. In *Merchants Mutual Insurance Co. vs. Wilson,* 2 *Md.,* 241, it was said, "the proposition that a usage must be general in order to bind the parties, refers exclusively to the cases in which the knowledge of the parties and their intention to adopt the usage, are inferred merely from the fact of its existence; but when their knowledge or intentions are established by other direct or circumstantial proof, their contract will be governed by the usage, however local or partial, in reference to which it is proved or presumed to have been made." If the contract in this case had specified the mode or system of measurement by which the number of perches was to be estimated, it would not have been competent to vary or contradict it by evidence of the custom. The writing would necessarily have been regarded as expressing the contract and intention of the parties; but usage is admissible to interpret a contract and to ascertain the meaning of the parties, where it can be done without violence to the terms used. As a matter of course, a custom gives a meaning to a written contract different from that which it would have in the absence of the custom. It would be a very ineffective and anomalous sort of a usage, which should be without effect on the acts and contracts of parties. We can easily see from decided cases how far customs have been permitted to affect and control written contracts, without being regarded as violating the rule against varying or contradicting the terms of a written instrument. In the case of the Bank of Columbia, already referred to, the written contract was to pay a sum of money sixty days after date; and yet a custom was held good, by which the money was not payable until the fourth day after the expiration of the time limited for payment, according to the terms of the note. A custom repugnant to the general law on the subject, and to

the literal meaning of the words of the contract. In the opinion of the Court, the case of *Cutter vs. Powell*, 6 *Term Rep.*, 320, is cited. In that case, a promissory note had been given to the mate of a ship for a certain sum of money; to be paid provided he proceeded on his voyage and continued to do duty to the port of destination. He died on the voyage; and of course according to the proper construction of the note, nothing was due. An inquiry into the usage was however directed to be made by the Court of King's Bench; and all the Judges expressed a willingness to sanction an allowance for the time the service was performed, provided the usage would warrant it. In the same opinion, *Halsey vs. Brown*, 3 *Day*, 346, was cited. In this case, assumpsit was brought against the owners of a brig for a number of gold and silver coins shipped on board, to be transported and delivered to a mercantile house in New London; for which a bill of lading was given by the master in the usual form. The ship-owners were allowed to defeat the ordinary and usual construction of the bill of lading, by proving a custom that the freight for money received by the master of a vessel was his perquisite; that he was to be compensated for the transportation of it, and not the owners of the vessel, and that the contract was his personal engagement, but imposed no liability on the owners. In *Williams vs. Woods, Bridges & Co.*, 16 *Md.*, 255, evidence had been given that by mercantile usage, a credit of six months is always given on a sale of coffee, where there is no stipulation to the contrary; and the Court held that an entry in mercantile books of a sale of coffee, stating no time of credit, correctly represented a sale of the article where by the express terms of the contract, there was to be a credit of six months. In *Powell vs. Bradlee*, there was a parol contract for the sale of goods for cash; and yet it was permitted to

prove that by custom, the goods were to be delivered
without demanding the cash at the time of delivery.
We see no reason why it was not competent to prove
the custom alleged in the present case. If it was
known to Patterson; in the language of the Court
in the case of the Bank of Columbia, the usage en-
tered into the contract, became a part of it and must
be regarded in the interpretation of it. 1 *Harris &
Gill*, 250. But although a contracting party may have
knowledge of a custom, he may exclude it from his
contract, by express agreement. There was no offer
to prove that Patterson had knowledge of the usage.
He seems to have in some way become bound to build
this wall for the United States; but his relation to the
work is not distinctly stated in the bill of exceptions.
We cannot say, from anything therein stated, that he
was presumed to know the custom. But nevertheless
the plaintiffs had the right to offer it in evidence as a
competent part of their proof. A party cannot offer
all of his evidence at the same moment; and when
he tenders evidence legal and material to the issue,
it is the duty of the Court to receive it, and it cannot
require him to state in advance what other proof he
intends to offer. The plaintiffs had a right after prov-
ing the custom to show that it was known to Patterson,
if they had evidence to show such knowledge; but the
proof of the custom could not have been rejected, be-
cause he did not state that he intended to follow it up
with evidence of such knowledge. *Plank Road Com-
pany vs. Bruce*, 6 *Md.*, 464.

After giving evidence of the custom, the plaintiffs
proved by one Chalk that he measured the stonework
in question according to masons' measure; and "that
he did not, at the time of making the measurement or
calculations, nor at any other time, have in his pos-
session or before him the drawings and specifications

Patterson *vs.* Crowther & Boone.

for the erection of said wall, but that at sometime subsequent to the measurement of said wall, he obtained a part of the drawings from which to ascertain the contents or measurement of certain portion of said work, which he could not see at the time of making his measurements." The defendant excepted to the admission of the evidence. It is not very clear why the witness could not see a portion of the stonework; we suppose that it was under ground. But from whatever cause it was that he could not see the work, it was competent for him to resort to the drawings; inasmuch as there was evidence in the cause that the work had been done in accordance with the drawings and specifications as Boone understood them, and that it had been accepted by the government inspector. It was for the jury to attribute such value to the testimony as they believed it ought to have. They might put confidence in Boone's understanding of the drawings and specifications, or they might refuse to do so. The question was for them. The third exception was taken to the Court's overruling a motion to exclude Chalk's testimony from the jury. Our views on this point are sufficiently shown by what we have said on the second exception.

*Judgment affirmed.*

(Decided 10th January, 1889.)