## MAURICE HIMMEL, Use, etc.,

### *vs.*

## ISRAEL LEVINSTEIN.

*Salesmen's contracts: "commission basis and drawing salary";
failure to ship orders; burden of proof; reference to
auditor; report of auditor; effect
of—. Prayers.*

Evidence of usage or custom may be given in a suit upon a
written contract, in the absence of express stipulations, or
where the meaning of the parties is uncertain and doubtful
upon the language used, or where the usage of the trade or
business to which the contract relates may afford explanations
and supply the deficiencies of the instrument.          p. 322

When a contract is made with a man about the business of
his craft, it is framed on the basis of its usage, which becomes
a part of the contract, except when its place is occupied by par-
ticular stipulations.                    p. 322

Where a salesman is employed on commission, "on the net
amount of shipments of orders, less failure," he is not entitled
to commissions on orders which his employer can not fill, either
at once, or within such reasonable time as will suit the pur-
chaser.                              pp. 324-325

Where a plaintiff's prayer was for the Court to instruct the
jury that if "they find from the uncontradicted evidence, etc.,"
the action of the Court in modifying the prayer by striking out
the word *"uncontradicted"* is unobjectionable.          p. 326

Where a salesman is employed on a commission basis, "the
net amount of shipment of orders, * * * less failures, etc.," in a
suit on the contract it is on the part of the plaintiff to prove
bad faith of his employer in rejecting orders, and not on the
defendant to show good faith.                    p. 326

In submitting to the jury a prayer referring to a usage or custom, it is for the Court to decide whether or not there is in the case any evidence to support the theory that there is such a usual custom of the kind referred to.                    p. 327

Employing a salesman at a commission, with a "drawing" salary of so much, means that the salary is to be deducted from and to be on account of the commission.                    p. 328

A suit upon a contract was referred to an auditor to state an account; the defendant prayed for an instruction to the effect that, while "the jury was not absolutely bound by the figures of the auditors' report, they should still consider the figures as *prima facie* correct; and in determining whether there is anything due from the defendant to the plaintiff, the jury should not change or deviate from such figures, unless they should be satisfied by a fair preponderance of evidence that some or all the figures are correct"; *held,* that such a prayer gave too much force and effect to the auditor's report and that it presented reversible error.                    p. 329

*Decided February 27th, 1918.*

Appeal from the Baltimore City Court. (STANTON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*B. H. Hartogensis* and *David Ash,* for the appellants.

*Vernon Cook* (with whom was *Hugo Steiner* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This suit was brought in the Superior Court of Baltimore City by the appellant against Israel Levinstein and Joseph Lubin, trading as the Baltimore Shoe House. The amended declaration contains six common counts and two special

counts.  On demand a bill of particulars was filed and exceptions to it were overruled.  A demurrer was then filed to the amended declaration, but it was overruled and general issue pleas were filed.  A jury was empanelled but a juror was withdrawn and the case was referred to an auditor.  The report of the auditor, depositions taken before him, exhibits, agreement of counsel, etc., were filed, and the case was removed to the Baltimore City Court, where it was tried, resulting in a verdict in favor of Israel Levinstein, and this appeal is from the judgment entered thereon.

Joseph Lubin was returned *non est,* and the record shows that the appearance of the attorneys was entered for Levinstein alone.  The demand for the bill of particulars and the demurrer were entered for "the defendants" instead of "the defendant," and a motion was made and granted to amend those and all pleadings in which the word "defendants" was used, as it was done inadvertently and the attorneys had no authority to appear for Lubin.  The first exception was taken to granting that motion, and the second was to the Court's ordering the jury to be sworn to try the issues joined between the plaintiff and Levinstein.  We do not understand those exceptions to be pressed, and there would seem to be no difficulty about them.  On the 23rd of June, 1910, an agreement was entered into between Israel Levinstein and Joseph Lubin, trading as the Baltimore Shoe House, and Maurice Himmel, all of Baltimore.  The body of that agreement is as follows, excepting we will number the paragraphs which was not done in the original:

"(1) The party of the first part agrees to employ the party of the second part for one year or longer as hereinafter stated as a general man in the house or as salesman on the road in such territory as may be from time to time specified by the party of the first part, and when employed in either capacity he agrees to give his entire time and attention to the business of the Baltimore Shoe House.

"(2) The party of the first part agrees to allow the party of the second part a drawing salary of $2,000 a year, payable semi-monthly or monthly, the same to be based on a 5% commission basis on net amount of shipments of orders, less failures and such accounts which may be placed with attorneys' for collection.

"(3) The party of the first part also reserves the right to reject such orders as in their judgment are not acceptable or desirable accounts.

"(4) The party of the second part agrees to accept the provisions of this contract, promises to abide by the same and also observe all the rules of the house.

"(5) It is further agreed by parties of both parts that 60 days' notice shall be given in writing when either desires to terminate contract after the end of one year from date herein stated, except this contract shall terminate by death or disability of party of either part from any cause whatsoever."

As there are fifty-four exceptions in the record, we will not attempt to discuss each one separately. The last one is numbered the 52nd and contains the rulings on the prayers. The 15th was abandoned, and there were inserted the 42½, 43½ and 49½, which account for the last being numbered 52. Exclusive of that and the first and second, the others relate to rulings on evidence.

*First*—What we have designated paragraph (2) is the one which presents the most important questions. It will be observed that nothing is said in the written contract about traveling expenses, but the plaintiff contends that there was a verbal agreement between him and the firm by which it was agreed that he was to be paid those expenses, while the defendant denies that such an agreement was made and relies on what he claims to have been a general trade custom in the shoe business in Baltimore, by which salesmen working on a 5% commission pay their own expenses. Whether or not what is called a "drawing salary" of $2,000 a year was to

be in addition to the 5% commission is also a matter of dispute, and evidence of the custom was introduced as to it.

(*a*) It is conceded by the appellee that, inasmuch as the written contract is silent on the subject, if there was a verbal agreement that the firm was to pay the traveling expenses, then it would be inadmissible to offer testimony of usage or custom on that subject, but he contends that there was not such a verbal contract, and hence the testimony was admissible. It may be well to say in passing that the plaintiff's fifth prayer, which was granted as modified, expressly instructed the jury that if they found that the Baltimore Shoe House did through Lubin enter into an agreement with the plaintiff to pay him 5% commissions, together with all his traveling expenses, in addition to the drawing salary, then they should disregard all evidence tending to show a general custom in and around Baltimore requiring wholesale shoe salesmen receiving 5% commissions on sales to bear all their traveling expenses. The defendant's first prayer in submitting the question of the general custom or usage required the jury to find that there was no oral agreement or understanding between the parties as to traveling expenses, and his second in regard to the drawing salary had a similar requirement. It is therefore clear that there was no attempt to vary the alleged verbal contract by a custom or usage, but it was only in the event of the jury finding that there was no such contract that the evidence was to be considered.

(*b*) The eighth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-third, thirty-sixth, thirty-seventh and thirty-eighth exceptions relate to the question of usage or custom. Without deeming it necessary to discuss those exceptions separately, we think it is clear that there was evidence of such custom. In addition to the testimony of the appellee himself, that of Messrs. Jandorf, Mills, Tubman, Cohen and Blum at least

tended to establish a general and uniform custom or usage in the wholesale shoe business of Baltimore in reference to traveling expenses and a drawing salary. In *Appleman* v. *Fisher,* 34 Md. 540, 552, JUDGE ALVEY said: "It would certainly have been competent to them, by express reference, to have adopted the usage in Baltimore as determining the nature of the contract, and we think it equally clear that if it be done by implied or tacit understanding, it is as much obligatory upon the parties as if incorporated into the contract itself. The principle upon which usage or custom is applied to the interpretation of contracts is very familiar, and of constant occurrence. It may be resorted to in the absence of express stipulations, or where the meaning of the parties is uncertain or doubtful upon the language used, or where the usage of the trade or business to which the contract relates, or with reference to which it was made, may afford explanation and supply deficiencies in the instrument." In *Given* v. *Charron,* 15 Md. 502, CHIEF JUDGE LE GRAND, in considering an offer of evidence of a custom among dry goods jobbers in the City of Baltimore, said: "We think the testimony was properly admitted. It was pertinent to the contract declared upon, and a link in the chain of evidence to establish a custom existing among dry goods jobbers as to the time for which they were to be understood as employing clerks when nothing was said in regard to it." See also *Lyon* v. *George,* 44 Md. 295; *Kraft* v. *Fancher & Brown, ibid.,* 204; *Barker et al* v. *Borzone,* 48 Md. 474; *Biggs* v. *Langhammer,* 103 Md. 94. The general rule as to usages of different trades and professions is thus stated in 12 *Cyc.* 1044: "If there is a general usage applicable to a particular profession or business, parties employing an individual in that profession are supposed to deal with him according to that usage. All trades have their usages, and when a contract is made with a man about the business of his craft, it is framed on the basis of its usage, which becomes a part of it, except when its place is occupied by par-

ticular stipulations. But the customs and regulations of employers requiring notice of intention to leave the master's service must, in order to affect the servant, be shown to have been known by the latter at the time of entering the service." Even if there be any question about the knowledge of a party of the usage and custom or whether it was to be presumed, it was held in *Patterson* v. *Crowther,* 70 Md. 124, that evidence of the custom or usage was admissible, even if no proffer was made to follow it up with evidence of such knowledge. The testimony offered in these exceptions was, therefore, admissible.

(*c*) The third exception is not material and requires no comment. In the fourth there was no error. As the offers in reference to non-shipment of statements made by Lubin were after the partnership had ended, and he was not a party to the suit, it was properly excluded. The fifth, sixth and seventeenth were immaterial. The ninth was relevant, but the answer relieved it of injury, if it had not been. There is no ground for reversal in the tenth, eleventh, twelfth, thirteenth, fourteenth and sixteenth. We have already referred to the exceptions numbered from the seventeenth to the thirty-eighth, inclusive, except the thirty-fourth and thirty-fifth, about which we have no doubt as to the correctness of the rulings. We see no special objection to the evidence in the thirty-ninth, but the question itself was somewhat argumentative, and the plaintiff got all the benefit of it he could have done if it had been answered. There was no error in the fortieth. The forty-first, forty-second, forty-second and a-half, forty-third and forty-third and a-half related to statements alleged to have been furnished by the witness for Himmel. Some of them perhaps carried the inquiry further than the rules of evidence permitted, but none of them are of a character which would justify the reversal of the judgment. The forty-fourth was useless but harmless. The forty-fifth was immaterial. The forty-sixth, forty-seventh and forty-eighth referred to Mr. Merican. The evidence in those ex-

ceptions would seem to have been admissible to contradict
the appellee. He had testified that all of the salesmen who
traveled on a commission basis of 5% were charged expenses
and shortage and always had been. It may be true that Mr.
Merican was under a special contract, and hence was not
governed by the custom or usage, but, if not, it was admis-
sible evidence, and if such was the fact it could have been
shown that he was under a special contract. Even then it
would have contradicted the broad statement made by the
appellee and would have reflected upon the question whether
there was such a general custom. That was very material
and it was error to exclude the evidence. The question in
the forty-ninth ought to have been permitted to be answered.
The subject was gone into by the defendant. The forty-
ninth and a-half was also admissible. We are also of the
opinion that there was error in excluding the evidence in
the fiftieth exception. That reflected on the question of
custom. We do not understand why the question in the
fifty-first was not allowed to be answered. It is true that if
plaintiff was largely indebted to defendant it would not be
very material, but he denied that he was so indebted.

*Second*—This brings us to the rulings on the prayers.
The plaintiff's first prayer was faulty in several respects.
In the first place, it asked the Court to instruct the jury that
if they found that out of the orders sent into the house by
the plaintiff some goods were not shipped for reasons other
than because such orders were, in defendant's judgment, not
acceptable orders or desirable accounts, then they could allow
the plaintiff five per cent. commissions on the net amount
of such orders or parts of orders so rejected as such. The
contract allows the commissions "on net amount of ship-
ments of orders, less failure," etc., not on the orders received.
If, for example, a salesman sends in orders which his em-
ployer can not fill, either at once or within such reasonable
time as will suit the purchaser, and they are not filled, the
salesman would not be entitled to commissions under such

a contract as this. There may be other reasons why the employer could not be required to fill the orders. Then under this prayer the plaintiff would have been entitled to recover the salary plus the commissions, regardless of whether there was such a contract or not. We could have no hesitation in saying that if we are to be confined to the written contract, such would not be our construction of it, and if we assume there is sufficient in the record to show that there is some evidence of a subsequent agreement to that effect, it is denied, and was at least a question for the jury to determine, but the prayer does not submit it. So without discussing other questions which might be pointed out, we are of the opinion that that prayer was properly rejected. The same may be said of the plaintiff's prayer No. 1½. The plaintiff's second prayer was also properly rejected. It would, to say the least, have been misleading. It is true it does not say what the plaintiff would have been entitled to recover, but the jury might have inferred it was "for the unexpired portion of the term of his said employment." He obtained employment elsewhere, with the assistance of the defendant, in less than a month after he claims to have ceased work for the defendant. When he was told of the conditions by Mr. Lubin which he testified to, he made no objection to giving up the place with the firm. If the evidence of the defendant was correct, which the prayer did not submit to the jury, the plaintiff owed the defendant at the time he left his employ, and still does, a large sum of money. The jury could have had no guide to go by in undertaking to fix any amount. The third prayer was also properly rejected. Nor can we give our sanction to the plaintiff's fourth prayer. That would have required the defendant to continue the plaintiff in his employ sixty days longer, "even if the plaintiff was, at the time of his discharge, indebted to the defendant in any sum whatsoever," to use the language of the prayer. In other words, if the plaintiff was willing and able to go on with his employment, and had not been terminated by death

or disability of the defendants, then according to the plaintiff's contention, the defendant could not discharge him without giving him sixty days' notice in writing—whatever other reason might exist for terminating the employment. The defendant had testified that the plaintiff had refused to do some things he was directed to do, but none of those matters were submitted in this prayer. Without further discussing it, we think there was no error in rejecting it. There can be no valid objection to the modification of the plaintiff's fifth prayer. It originally read: "Plaintiff prays the Court to instruct the jury that if they find from the *uncontradicted* evidence," etc. The Court struck out the word "uncontradicted," and why the plaintiff should object to that we do not understand. The jury was permitted to find from the "evidence" by the Court's modification, and was not limited to "uncontradicted evidence," as it was by the prayer as originally drawn. The plaintiff's prayer No. 6½ was also properly rejected. There is no legally sufficient evidence that any rejection of orders was made "without the exercise of their judgment or in bad faith," as the prayer states, but it asked that the jury be instructed that under the written contract Levinstein "in his accounting with the plaintiff is entitled only to such deductions from the plaintiff's sales orders as said Levinstein had proved to the jury's satisfaction were by the Baltimore Shoe House rejected in the exercise of their judgment and in good faith." We understand the burden to be on the plaintiff to prove bad faith, and not on the defendant to prove good faith. *Lynn* v. *B. & O. R. R. Co.,* 60 Md. 404.

The defendant's first prayer is in reference to the general custom or usage in Baltimore City as to traveling expenses, in the absence of contract, and the second is in reference to that as to the drawing salary. Those prayers have given us more difficulty than any of the others. The first one did submit to the jury the question whether "there is a general custom or usage in Baltimore City and vicinity between em-

ployers and employees engaged in the wholesale shoe business, to the effect that traveling salesmen who are employed by wholesale shoe houses to sell upon a five per cent. commission are to have their traveling expenses advanced by the employer but charged against the employee and deducted from his commissions," etc., but it did not submit the question of his knowledge of the custom or usage. It will be observed that the expression "uniform," which the cases generally hold the custom or usage must be, was omitted, but regardless of that the evidence in the case relative to the custom or usage, which in our judgment was sufficient to be submitted to the jury, can not be said to be of such character as would authorize the Court to say, as a matter of law, that the plaintiff must be presumed to have had knowledge of it and to have contracted with reference to it. There was ample evidence to go to the jury on the subject, but it was for it to say whether the custom was sufficiently general and well established to give notice to the plaintiff of it. It was said by JUDGE BRISCOE, in *Balt. Baseball Club* v. *Pickett,* 78 Md. 375, 384, that "The authorities all hold that a usage to be admissible must be proven to be known to the parties or be so general and well established that knowledge and adoption of it may be presumed, and it must be certain and uniform," citing a number of cases. Amongst those cited is *Patterson* v. *Crowther,* 70 Md. 124, to which we referred in considering the question of the admissibility of the evidence as to the usage. After quoting from *Bank of Columbia* v. *Fitzhugh,* 1 H. & G. 239, 248, JUDGE BRYAN, in speaking for the Court, said: "Unless it is of such great notoriety that knowledge and adoption of it may be presumed, it must be proved to be known to the party whose contract is to be brought within its operation." Although Patterson made a contract for work to be done in Baltimore County, and it was proven that there was a well known custom in that county and Baltimore City which was sought to be used against him, JUDGE BRYAN said: "There was no offer to

prove that Patterson had knowledge of the usage. He seems to have in some way become bound to build this wall for the United States; but his relation to the work is not distinctly stated in the bill of exceptions. We can not say, from anything therein stated, that he was presumed to know the custom." It was said in *Burroughs* v. *Langley,* 10 Md. 248: "Notwithstanding the evidence as to the prevalence of the custom was all on one side, that question should have been submitted to the jury. *Grove* v. *Brien,* 1 Md. Rep. 438. And the prayers should also have indicated the inference that they were at liberty to draw from the whole evidence— that is to say, whether the parties contracted with reference to the usage, or not." See also *Oelrichs & Lurman* v. *Ford,* 21 Md. 489, 520, where the distinction is pointed out between a general usage, of which the Courts take notice, *ex officio,* and special or particular usages. There undoubtedly may be such as do not require the submission of them to the jury, but we can not hold that the evidence in this record is sufficient to put this case in that class—although as already indicated we are of the opinion that there was ample to go to the jury for it to determine whether the parties contracted with reference to the usage or custom. It is certainly a safer rule to require that to be submitted to the jury under such circumstances as we have before us, and the defendant's first prayer is, in our judgment, defective for not doing so.

Much of what we have said is applicable to his second prayer, but there is this difference: With the evidence explaining what "a drawing salary" is we think there can be no question about the proper interpretation of the written contract on that subject. It manifestly does not mean a salary plus commissions, but that the salary should be deducted from the commissions, and we do not think there was enough in the record to justify the contention that there was legally sufficient evidence of any understanding or agreement to pay the salary in addition to the commission, or any valid alteration of the written contract, which—especially

with the evidence explaining the meaning of the term—is clear on that question. It would not, therefore, be necessary to reverse the judgment on account of the omission in the second prayer. The defendant's fourth, fifth and sixth prayers were properly granted. His seventh prayer is as follows: "The defendant prays the Court to instruct the jury that in determining whether or not there is any sum due the plaintiff from the defendant, they have a right to consider the auditor's report filed in this case and offered in evidence, and that while they are not absolutely bound by the figures contained therein, that they should consider said figures as *prima facie* correct, and in determining whether or not there is anything due from the defendant to the plaintiff in this case, they should not change or deviate from said figures so found by the auditor unless they are satisfied by a fair preponderance of evidence that some or all of said figures are incorrect." As the auditor's report seems to have been filed with the consent of both sides, this case may be conceded to be different to some extent from *Wisner* v. *Wilhelm,* 48 Md. 1, but it would be going very far to give such an audit the force and effect that this prayer gave it, and in view of what was said in *Wisner v. Wilhelm* we must hold the granting of that prayer reversible error.

"The Court's instruction" was clearly correct. We do not deem it necessary to further discuss the special exceptions to the prayers.

It follows that the judgment must be reversed.

*Judgment reversed and new trial awarded, the appellee to pay the costs.*