Baltimore Base Ball Club & Exhibition Co. *vs.* Pickett.

(Decided 12th January, 1894.)

---

## THE BALTIMORE BASE BALL CLUB AND EXHIBITION COMPANY OF BALTIMORE CITY *vs.* JOHN T. PICKETT.

*Construction of Special contract of Hiring—Base ball player —Standard of Efficiency—Ordinary skill—Usage—Admissibility of Proof to Vary Contract—Measure of Damages.*

A contract was entered into between the B. B. Club of Baltimore City of the first part, and P. of the City of Chicago of the second part, in these words: "The said party of the second part agrees to play ball for the party of the first part for the season of 1892, for the sum of three thousand ($3,000) dollars,

Baltimore Base Ball Club & Exhibition Co. *vs.* Pickett.

with five hundred dollars advanced on the contract, said sum of five hundred dollars ($500) to be considered part of the said three thousand ($3,000) dollars above stated; salary payable first and fifteenth of each month; services to commence on the 26th of March, 1892, and to end on October 31st, 1892." P. entered upon the services and performed them until first day of June, 1892, when he was discharged or released. He was paid the five hundred dollars advance money, and also four payments on account of his salary. The grounds set up for his discharge were want of skill and ability. In an action by P. against the B. B. Club, for a breach of the contract, two defences were relied upon by the defendant: First, that the plaintiff did not exercise that degree of skill and efficiency required of professional base ball players, playing in the league or association to which the defendant belonged, and was discharged for inefficiency. Secondly, that there was a universal and well known custom observed by all professional base ball clubs, that the club shall have the right on ten days notice, to release any player who does not come up to the requirements of his position and play satisfactorily; and that the defendant received the ten days notice and was discharged. HELD:

1st. That the standard of comparison or test of efficiency, is that degree of skill, efficiency, and knowledge which is possessed by those of ordinary skill, competency, and standing in the particular trade or business for which they are employed; and no higher skill than this could be required of the plaintiff, the contract being entirely silent as to the degree of skill to be possessed.

2nd. That the evidence failed to establish the custom or usage relied on as a defence, the same being too vague and unmeaning, and the plaintiff having testified that he had never signed or seen a contract with the ten days clause, and knew of no custom by which a player could be discharged in that way.

3rd. That a usage to affect a contract must be proved to be known to the parties, or be so general and well established, that knowledge and adoption of it may be presumed, and it must be certain and uniform.

4th. That conceding there was sufficient evidence of the custom and usage contended for by the plaintiff, it was not admissible to vary the terms of the special contract, which was for a definite term of service and binding on both parties.

Baltimore Base Ball Club & Exhibition Co. *vs.* Pickett.

5th. That if the jury found for the plaintiff, he was entitled to recover the contract price, less such sums as might have been paid him, and also what he had earned, or by due diligence might have earned in the line of his business, during the remainder of the period covered by the contract.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the defendant asked one of its witnesses, the following question: "Can you tell whether or not the degree of skill which is exacted of players in the clubs in the league, to which the Baltimore Club belonged, is more than the degree of skill which is exacted of players in clubs in other associations, and whether this was well known to all base ball players whom you have met?" To this question the plaintiff objected, and the Court (RITCHIE, J.,) sustained the objection and refused to permit the question to be put or to permit the witness to answer the same. The defendant excepted.

*Second Exception.*—The counsel for the defendant asked the same witness the following question: "State whether or not there was a certain well known standard of skill exacted of players in the National League, which was known to all professional base ball players in the country?" To this question the plaintiff objected, and the Court sustained the objection. The defendant excepted.

*Third Exception* abandoned.

*Fourth Exception* not passed upon by the Court.

*Fifth Exception.*—The counsel for the defendant asked the following question: "State whether or not it is a well known fact that the league clubs require a much higher degree of skill than any other clubs in the country." To this question the plaintiff objected, and the Court sustained the objection. The defendant excepted.

*Sixth Exception.*—The counsel for the defendant asked the witness the following question: "State whether or not playing professional base ball for the clubs of the National League is in itself a separate and distinct profession and calling from playing professional base ball with any of the minor clubs of the country?" To this question the plaintiff objected, and the Court sustained the objection. The defendant excepted.

*Seventh Exception.*— The counsel for the defendant asked the witness the following question: "State whether or not all professional ball players would know that there was a higher degree of skill, dexterity and efficiency required to play ball with any of the clubs of the National League from what would be required to play ball with any of the other clubs of the country?" To this question the plaintiff objected, and the Court sustained the objection. The defendant excepted.

*Eighth Exception.*—The counsel for the defendant then asked the following question: "Can you tell the jury whether from your observation of Pickett's playing he exerted and exercised the ordinary skill and dexterity of a professional base ball player?" To this the plaintiff objected, and the Court sustained the objection, and refused to permit the question to be asked and answered, as being too broad. The defendant excepted.

*Ninth Exception* waived.

*Tenth Exception* waived.

*Eleventh Exception.*—The plaintiff offered the three following prayers, and two others numbered two and three, which were refused and are omitted.

1. That if the jury find from the evidence, that on or about the 14th day of November, 1891, the plaintiff entered into an agreement with the defendant in which the plaintiff agreed to play ball for the defendant for the season of 1892 for the sum of $3,000, with $500 advanced, which was to be considered as part of said

Baltimore Base Ball Club & Exhibition Co. *vs.* Pickett.

$3,000, the salary to be payable on the 1st and 15th of each month, his services to commence on March 26th, 1892, and end on October 31, 1892; that the said plaintiff entered upon the discharge of his duties under said contract, and continued in the employ of the defendant until about the 1st day of June, 1892, faithfully performing his duties, if the jury so find, having received from said defendant the said advance of $500 and four instalments of $178.57 each, and that on or about the first day of June, 1892, the defendant dismissed him from its services and employment, and refused to permit him to perform said services, and that the plaintiff was ready and willing to perform his services under said agreement, and offered and tendered to continue in the service of the defendant until the time limited by said agreement for the expiration therefor, then the plaintiff is entitled to recover, unless the jury further find that plaintiff did not possess and exercise the skill, knowledge and efficiency possessed and exercised by other professional base ball players of ordinary skill, knowledge and efficiency, and that he was discharged for such reason.

4. That there is no evidence in this cause of any custom or usage prevailing by which the plaintiff could be released or discharged before the end of the contract period without sufficient cause.

5. The plaintiff moves the Court to strike out all evidence offered (and admitted subject to exception) to show the existence of a usage among professional base ball clubs to the effect that the club or its manager has a right at any time during the period of contract to discharge a player on ten days notice, in case such player does not play to the satisfaction of said club or manager.

The defendant offered ten prayers; the following only, which the Court rejected, are inserted:

1. If the jury shall find from the evidence in this case, that at the time of making the contract offered in evi-

dence there was a general custom prevailing among professional base ball clubs, that the manager of the club could discharge any player after ten days notice, who was not in the opinion of the manager of the said club of sufficient skill for his duties, and they shall further find that the plaintiff was not, in the opinion of the manager of the Baltimore Base Ball Club, of sufficient skill for his duties, and that the said manager did discharge the plaintiff, then their verdict must be for the defendant, unless the jury shall further find that the said manager was guilty of bad faith in forming his said opinion.

3. That if the plaintiff did not possess and use in the performance of his duties, under the contract offered in evidence, that degree or amount of skill which the jury shall find was reasonably required for the performance of the said duties, to the reasonable satisfaction of the defendant, then the defendant had a lawful right to discharge the plaintiff.

6. When the plaintiff agreed to play professional base ball for the defendant, knowing that the defendant belonged to the class of clubs known as league clubs, he is, by implication of law, to be considered as holding himself out as possessing that reasonable amount of skill and dexterity which is possessed by the professional base ball players who play for the league clubs, and if the plaintiff did not exercise and exert such reasonable skill and dexterity in the service of the defendant, the defendant had a right to discharge him, and the verdict must be for the defendant.

8. If the jury shall find that at the time of the making of the contract offered in evidence, the defendant was a member of the National League or of the American Association of Professional Base Ball Clubs, and that the plaintiff had knowledge of it, and shall further find that the plaintiff was employed by the defendant for the purpose

of taking part in contests between the defendant's club and other clubs of said association, and shall further find that the plaintiff did not possess or did not use in such contests that degree of skill which was ordinarily used by other members of the clubs belonging to the said association, then the defendant had the right to discharge the plaintiff, and their verdict must be for the defendant.

The Court granted the first, fourth and fifth prayers of the plaintiff, and gave also the following instruction of its own:

That if the jury find for the plaintiff, then he is entitled to recover the contract price, less such sums as may have been paid to him, and also less such sums as he earned, or by the exercise of due diligence might have earned, in the line of his business, during the remainder of the period covered by the contract.

And granted the second, fourth, fifth, seventh, ninth and tenth prayers of the defendant, and rejected the first, third, sixth and eighth prayers of the defendant.

The defendant excepted, and the verdict and judgment being against it, appealed.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, McSHERRY, and BRISCOE, J.

*William S. Bryan, Jr.*, and *Edward N. Rich*, for the appellant.

That the usage and custom was proved by one witness only has been held by the highest authority to be no objection to its admissibility. *Robinson vs. United States,* 13 *Wallace*, 363.

Not only was the custom established by legally sufficient evidence, but it is in every respect a reasonable and valid usage, and indeed one demanded by the nature of the employment, the limited opportunities of the pro-

prietors of gauging the skill possessed by the players, and the great loss which is entailed by the failure to exercise sufficient skill.

The law in regard to the effect of a custom or usage of a particular business in a contract is fully stated in the case of *Patterson vs. Crowther & Boone*, 70 *Md.*, 124, "where the usage of a particular trade or business is well established, it is as obligatory on the objects of its operation as a general law."

The Supreme Court of Wisconsin well said in *Hewitt vs. The John Week Lumber Co.*, 77 *Wis.*, 556: "Now the object of proving a general custom is not to contradict or change the contract made between the parties, but to interpret it to the Court and jury as it was understood by the parties at the time it was made; and the evidence of a general custom when it does not contradict or change *the express terms* of a contract, is admitted for the purpose of showing what the real contract between the parties was."

The contract in this case neither expressly nor by necessary or fair implication evinces any intention on the part of Pickett not to be bound by the custom. It is most briefly and informally drawn, and declares that Pickett agrees "to play ball" for the defendant for the season of 1892 for the sum of three thousand dollars, to be paid in a particular manner, and that his services shall commence on 26th of March and end on October 31st, 1892. There is no stipulation whatever as to what shall or shall not authorize either party to the contract to rescind or abrogate it.

Possibly the most analogous case that can be cited is *Metzner vs. Bolton*, 9 *Exch.*, 518, where a salesman was employed *for a year*, and there was a usage of the trade to dismiss on three months notice. The usage was held to modify the contract. See also *Given vs. Charron*, 15 *Md.*, 502; *Lyon & Scott vs. George*, 44 *Md.*, 300; *Patter-*

Baltimore Base Ball Club & Exhibition Co. *vs.* Pickett.

*son vs. Crowther & Boone,* 70 *Md.,* 125; *Williams vs. Woods, Bridges & Co.,* 16 *Md.,* 255; *Williams vs. Gilman,* 3 *Maine,* 276; *Smith vs. Wilson,* 3 *B. & Adolph,* 728; *Hewitt vs. The John Week Lumber Co.,* 77 *Wis.,* 548.

As the custom was general, had been in existence as long as there had been such a thing as professional base ball, and was observed by all professional base ball clubs, it was not necessary to prove that the plaintiff had any knowledge of it. That knowledge will, if the jury find the custom to have been of such general and universal prevalence, be presumed in law. *Lyon & Scott vs. George,* 44 *Md.,* 301; *Bank of Columbia vs. Fitzhugh,* 1 *Harr. & G.,* 248.

But if it were necessary for the jury to find *actual knowledge* of this custom on the part of the plaintiff, they could infer such knowledge from the fact that he himself testified that he had been a professional base ball player for eight or nine years, and had, among other clubs, played on the Philadelphia League Club in 1890.

It is a well known principle of law that, whenever any one accepts employment which requires the exercise of special skill or knowledge, he impliedly holds himself out as possessing and as agreeing to use that degree of skill which the employment demands. *Wood on Master and Servant, sec.* 157; *Leatherberry vs. Odell,* 7 *Fed. Rep.,* 641; *Waugh vs. Shunk,* 20 *Penn.,* 130; *Jones on Bailment,* 91; 2 *Kent's Comm.,* 458; *Story on Bailment,* 281; *Parker vs. Platt,* 74 *Ill.,* 430; *Lyon vs. Pollard,* 20 *Wall.,* 403.

*John M. Gallagher,* for the appellee.

Briscoe, J., delivered the opinion of the Court.

This suit was brought for the alleged breach of a special contract of hiring. The contract was made and entered into by and between the Baltimore Base Ball Club of the City of Baltimore, party of the first part,

and John T. Pickett, of the City of Chicago, party of the second part, and is in these words: "The said party of the second part agrees to play ball for the party of the first part for the season of 1892, for the sum of three thousand ($3,000) dollars, with five hundred dollars advanced on contract; said sum of five hundred ($500) dollars, to be considered part of the said three thousand ($3,000) dollars above stated. Salary payable first and fifteenth of each month; services to commence on the 26th of March, 1892, and end on October 31st, 1892."

The appellee, the plaintiff below, entered upon the services and performed them until the first day of June, 1892, when he was discharged or released. He was paid the five hundred ($500) dollars advanced money, and also four payments on account of his salary. The grounds set up for his discharge were want of skill and ability. The judgment was for the plaintiff and the defendant has appealed.

At the trial there were ten exceptions reserved to the rejection by the Court of evidence offered by the defendant, the third, ninth and tenth of which, were abandoned at the hearing. There were also exceptions to the granting of the first, fourth and fifth prayers of the plaintiff, and to the rejection of the first, third, sixth and eighth prayers of the defendant, and to the instruction on the part of the Court. These exceptions form the basis of this appeal, and we will pass upon them in their regular order. There were two defences relied upon by the appellant.

First, that the plaintiff did not exercise that degree of skill and efficiency required of professional base ball players, playing in the league or association to which the defendant belonged, and was discharged for inefficiency.

Secondly, that there was a universal and well known custom observed by all professional base ball clubs, that

the club shall have the right on ten days' notice, to release any player who does not come up to the requirements of his position, and play satisfactorily; that the defendant received the ten days' notice and was discharged.

It will be observed that the contract in this case was a special one, for a precise period, definite in its terms, and is simply an ordinary hiring under a special contract. It is entirely silent as to the degree of skill the plaintiff should possess in the business for which he was employed. In the words of the contract "he was to play ball for the Baltimore Base Ball Club, the party of the first part, for the season of 1892." Now, it is a well settled rule that the standard of comparison or test of efficiency is that degree of skill, efficiency and knowledge which is possessed by those of ordinary skill, competency and standing in the particular trade or business for which they are employed. And as the contract provided for no higher degree of skill than this, none other could be required. The Supreme Court of Pennsylvania lays down the doctrine to be: "Where skill as well as care is required in performing the undertaking, if the party purport to have skill in the business, and he undertakes for hire, he is bound to the exercise of due and ordinary skill in the employment of his art or business about it, or, in other words, to perform in a workmanlike manner. In cases of this sort he must be understood to have engaged to use a degree of diligence and attention and skill adequate to the performance of his undertaking. Ordinary skill means that degree which men engaged in that particular art usually employ, not that which belongs to a few men only of extraordinary endowments and capacities." *Waugh vs. Shunk*, 20 *Pa. St.*, 133; also *Harmer vs. Cornelius*, 5 *C. B. Reports, N. S.*, 236; *Parker vs. Platt*, 74 *Ill.*, 432.

This doctrine was fairly submitted to the jury by the first prayer of the plaintiff and the fourth prayer of the defendant, by which they were in substance, told that if they found that the plaintiff did not possess and exercise the skill, knowledge and efficiency possessed and exercised by other professional base ball players of ordinary skill, knowledge and efficiency, and that he was discharged for such reasons, then their verdict must be for the defendant. A large number of witnesses, who had been professional base ball players for six or ten years, and who had played with the plaintiff, testified that they considered him a good player, and that he played an average good game of ball.

We pass now to the second question in the case. The contention on the part of the appellant is that the contract was made subject to a usage or custom that the club had a right to cancel the contract and discharge the player on giving ten days' notice when the player is deficient in his playing. The contract is entirely silent upon this subject, and it is not admitted that the player had the reciprocal right to abandon the club, or to cancel the contract when he deemed it proper or right to do so. We have carefully examined the testimony, and find a failure of proof to establish any usage. The evidence was manifestly too vague and unmeaning to warrant, upon any principles, the submission of any proposition based upon it. The plaintiff testified "that he had been playing professional base ball for the past nine years, is familiar with the rules of the game, and had signed contracts for professional clubs; that he had never signed a contract with the ten days' clause; that he never even saw one, and knew of no custom by which a player could be discharged that way. That nothing was said about it when he signed." The authorities all hold that a usage to be admissible must be proved to be known to the parties or be so general and well estab-

lished that knowledge and adoption of it may be presumed, and it must be certain and uniform. *Foley & Woodside vs. Mason & Son*, 6 *Md.*, 51; *Second National Bank of Balto. vs. Western National Bank of Balto.*, 51 *Md.*, 128; *The Citizens' Bank of Baltimore vs. Grafflin*, 31 *Md.*, 520; *Patterson vs. Crowther & Boone*, 70 *Md.*, 125. But conceding that there was sufficient evidence of the custom and usage contended for by the appellant, we are clearly of the opinion that it was not admissible to vary the terms of this special contract. The contract, as we have said, is one for a definite term of service and binding on both parties. To admit the usage would not only destroy its mutuality but vary its terms. The Supreme Court of Rhode Island in a similar case to the one now under consideration held, that "a local usage cannot be considered a part of a contract, when it contradicts that contract." Justices DURFEE and HAILE, in delivering the opinion of the Court, say, the contract and usage cannot stand together. Either the contract must prevail and make void the usage, or the usage must prevail and make void the contract. The contract described in this declaration is not a contract made with reference to the usage, but against it. The contract described, is to labor for a year, but the usage terminates it at will. The contract is by the very fact of its existence, a protest against the usage, for it ceases to be a special contract the moment that the usage is made part of it. A usage which annuls such a contract cannot be given in evidence, without subverting the well settled rule, that usages inconsistent with a contract cannot be given in evidence to affect it. *Sweet vs. Jenkins and Man*, 1 *Rhode Island*, 147. And to the same effect, is the case of *Peters vs. Staveley*, Court of Queen's Bench, where Chief Justice COCKBURN holds that, the contract being for one week certain, the custom even if proved, could not control it. 15 *Law Times Reports*, 275;

also, *Smith vs. Sheridan*, 32 *N. Y. State Reporter*, 23. The same rule has been established by this Court in a number of cases. *Foley & Woodside vs. Mason & Son, supra; The Citizens' Bank of Baltimore vs. Grafflin, supra; Susquehanna Fertilizer Co. vs. White & Co.*, 66 *Md.*, 452; *Patterson vs. Crowther & Boone*, 70 *Md.*, 125; *First Nat. Bank of Baltimore vs. Taliaferro*, 72 *Md.*, 165.

It follows then from this view of the case, that there was no error by the Court in granting the plaintiff's fourth and fifth prayers which were to the effect that there was no evidence of any usage by which the plaintiff could be discharged before the end of the contract period without sufficient cause, and the exclusion from the jury of all evidence offered to show the existence of such a usage. The first prayer of the defendant relative to the existence of the usage was properly rejected. The third, sixth and eighth prayers of the defendant were properly rejected for the reasons we have heretofore given. The first prayer granted on the part of the plaintiff was correct, and contained the law upon that branch of the case. We have examined all the exceptions and discover no error of which the appellant has a right to complain.

The first, second, fifth, sixth and seventh exceptions to the admission of evidence, are substantially the same, and present the question as to the degree of skill required of the plaintiff in the performance of his duty. The evidence was properly rejected because it tended to exact or to establish a higher degree of skill than that contemplated by the contract. The appellant was not a member of the National League at the time the contract was entered into, on November 14, 1891; it did not become such until January, 1892. This testimony was therefore immaterial and irrelevant. The fourth exception was to the refusal of the Court to allow the following question to be answered: "Can you tell

whether or not there was any public complaint by the patrons of the manner in which Mr. Pickett filled his position?" It is unnecessary to pass upon the exception as the witness afterwards substantially answered the question proposed, and defendant had the benefit of his answer. The remaining exception was to the instruction of the Court as to the measure of damages. This prayer instructed the jury that if they found for the plaintiff, he was entitled to recover the contract price, less such sums as may have been paid to him, and also less such sums as he earned, or by the exercise of due diligence might have earned, in the line of his business, during the remainder of the period covered by the contract. We think this was unexceptionable, and is the law laid down by this Court in *Cum. & Pa. R. R. Co. vs. Slack,* 45 *Md.,* 161.

Finding no error, and the whole case having been fairly submitted to the jury, the judgment will be affirmed.

*Judgment affirmed.*

