**PLANMATICS, INC.,**
**Plaintiff/Counter–**
**Defendant,**

v.

**Robert SHOWERS, Defendant/Counter–**
**Claimant.**

**No. Civ.A. AW–97–4065.**

United States District Court,
D. Maryland,
Southern Division.

March 5, 2001.

Keith Ryan Havens, Rockville, MD, for Planmatics, Inc.

W. Michael Pierson, Pierson & Pierson, Baltimore, MD, for Robert Showers.

### *MEMORANDUM OPINION*

WILLIAMS, District Judge.

This action stems from a non-competition agreement allegedly formed between Planmatics, Inc. ("Planmatics") and its former employee, Defendant Robert Showers. Plaintiff alleges that Showers breached the non-competition agreement and engaged in conduct during his employment that amounted to a breach of his fiduciary duties. Currently pending before the Court is Defendant's Motion for Summary Judgment [64–1]. Defendant's motion for summary judgment does not attack the validity of the non-competition agreement

or the alleged breach. Rather, Defendant primarily confines his argument to the absence of proof of damages caused by the alleged breaches. The motion has been fully briefed by both parties.[1] No hearing is deemed necessary. *See* Local Rule 105.6. Upon consideration of the arguments made in support of, and opposition to, the motion, the Court makes the following determinations.

## I. *FACTUAL BACKGROUND*

Planmatics is a consulting business that offers its services to customers throughout the United States. Anura deSilva is its President and Chief Executive Officer. In 1993, Planmatics procured a contract with Ryder Integrated Logistics, Inc., a subsidiary of Ryder Systems, Inc. (collectively "Ryder"). This was the only written contract between Planmatics and Ryder. Any additional work beyond the contract was based upon subsequent oral agreements and confirmatory memoranda.

In July 1994, Planmatics hired Robert Showers to provide marketing and consulting services to its customers. According to Plaintiff, as a condition of Showers' employment, he was required to sign a non-competition agreement. The non-competition agreement restricted Showers from engaging in market or consulting services with certain customers, including Ryder, for a period of two years after the termination of his employment with Planmatics. During his tenure, Showers was primarily assigned to work on Planmatics' contract with Ryder.

Along with other contractors assigned to the project, Showers worked under the direction of Glen Riser, the senior project manager from Ryder. The compensation of Planmatics and the other vendors assigned to the project was directed through Riser. Over the course of the project, Planmatics submitted invoices to Ryder through Riser for payment. In 1995, Gay Ann Miller, one of Riser's subordinates, questioned the appropriateness of some of the invoices submitted on Planmatics' behalf. Such invoices included bills for entertainment, strip clubs, restaurants, bars, first class airline tickets, duplicates, and a personal phone for Riser. After her inquiries received a hostile response from Riser, Miller reported the questionable billing practices to Ryder's management. Thereafter, Ryder dispensed a team led by Miller to perform an audit of the invoices submitted by Planmatics. In a letter dated October 5, 1995, Henry Fiallo, Ryder's Vice President of Information Systems, informed Mr. deSilva that a credit of $48,941.01 would be taken against Planmatics' outstanding invoices. The 1995 audit resulted in the termination of Riser with Ms. Miller taking his place. In June 1996, Showers terminated his employment with Planmatics. In tendering his resignation, Showers indicated that he intended to start his own business. From July 1996 through March 1997, Showers ran his own consulting business. Soon after his termination, Showers was contracted by Ryder to perform warehouse management and consulting work on several projects. In December 1997, Plaintiff instituted the present action.

## II. *DISCUSSION*

### A. *Legal Standard*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lob-*

---

1. The Court notes that Plaintiff's opposition is untimely and was filed without leave of court in contravention to the local rules. *See* Local Rule 105.2. Nonetheless, the Court shall *sua sponte* grant Plaintiff leave to file its opposition *nunc pro tunc.*

*by, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the nonmovant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.,* 152 F.3d 326, 330–31 (4th Cir.1998). In responding to a proper motion for summary judgment, the opposing party must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. As a result, the burden of production shifts to the nonmovant to show a genuine factual dispute exists as to the issues in controversy. *See Celotex Corp.,* 477 U.S. at 317, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. *Evidence Considered on Motion for Summary Judgment*

#### 1. *Deposition Testimony*

In his motion for summary judgment, Defendant relies heavily on the deposition testimony of Ryder employees to establish that, as a result of the billing irregularities, Ryder would not do any future business with Planmatics. Rather than produce contradictory evidence showing a reasonable likelihood that Planmatics could have received Ryder's business in the future despite the 1995 audit, Plaintiff asserts that the main portions of the employees' testimony are inadmissible hearsay that cannot be considered on a motion for summary judgment. Specifically, Plaintiff asserts that the deposition testimony of Robert Gibler and Gay Ann Miller relating that they and the other managers at Ryder were instructed by their supervisor, Henry Fiallo, not to divert any future work to Planmatics is hearsay. Showers counters that the statements are not hearsay because they are not offered for the truth of the matter asserted therein. Rather, Showers maintains that the instructions constitute verbal acts evidencing the fact of a imperative command by Henry Fiallo not to use Planmatics' services.

On a motion for summary judgment, a district court may only consider evidence that would be admissible at trial. *See Rohrbough v. Wyeth Laboratories, Inc.,* 916 F.2d 970, 973 (4th Cir.1990); *Keziah v. W.M. Brown & Son, Inc.,* 888 F.2d 322, 326 (4th Cir.1989). "Hearsay is 'a statement', other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted.*" *United States v. Lis,* 120 F.3d 28, 30 (4th Cir.1997) (alterations in original) (quoting Fed. R.Evid. 801(c)). Therefore, statements offered to prove the making of the declara-

tions are not inadmissible hearsay. *See United States v. Samuel,* 431 F.2d 610, 613 (4th Cir.1970). In her deposition, Ms. Miller stated, in pertinent part,

> As a result of that meeting, Henry did go on to explain to me that because of the audit, because of the unethical business practices, if you will, and because of things that were being charged through within his division, Planmatics was considered—should never do business again within the RIL/MIS division. So I was instructed as a manager that they could never come back in and do business within our division. And Henry, you know, informed all his managers, that are my peers, of that.

(Def. Mot.Summ.J., Ex. 4 Miller Depo. at 23–24) Ms. Miller's testimony relates Mr. Fiallo's instructions to her to divert new business away from Planmatics and explains her subsequent efforts to withhold new business from Planmatics. Along these same lines, Mr. Gibler testified in his deposition as follows:

> After the meeting it was very clear to me that Henry Fiallo had no intention of allowing Anura to do additional work. Shar did not specifically say that we would not do additional work with Planmatics, however, he was not at all encouraging. And the feeling that I went away with was that it would not be a good idea to bring up Planmatics again..... I had a very definite feeling from Shar that I was not to use Planmatics.

(Def.Mot.Summ.J., Ex. 5 Gibler Depo. at 22–23) Mr. Gibler's testimony recounts his own personal impression of the events and actions he witnessed following the discovery of the improper billings and explains his reasons for not directing any more new business to Planmatics.

The testimony of both witness is not being offered for the truth of the matter asserted therein. Rather, their signifi-

cance lies in the actual making of the statement by high-ranking officials instructing the managers of Ryder not to do business with Planmatics. Although the Fourth Circuit has not directly spoken on the matter, other courts of appeals have agreed that out-of-court declarations to a witness offered for the purposes of proving the fact of the instruction or command are not hearsay as defined by Fed.R.Evid. 801(c). *See United States v. Murphy,* 193 F.3d 1, 5–6 (5th Cir.1999); *United States v. Bellomo,* 176 F.3d 580, 586 (2d Cir.1999), *cert. denied,* 528 U.S. 987, 120 S.Ct. 447, 145 L.Ed.2d 364 (1999) ("Statements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay."); *United States v. Reilly,* 33 F.3d 1396, 1410 (3d Cir.1994) (quoting Graham, *Federal Practice and Procedure: Evidence* § 6705 at 409) ("Instructions to an individual to do something are ... not hearsay because they are not declarations of fact and therefore are not capable of being true or false."). Accordingly, the Court finds that the testimony of Ms. Miller and Mr. Gibler relating the instructions they received from their superiors in Ryder constitute admissible evidence that may be considered on a motion for summary judgment.

### 2. *Answers to Interrogatories*

■ In opposing Defendant's motion for summary judgment, Plaintiff relies on its own answers to interrogatories as sworn by its President, Mr. deSilva. Showers maintains that Planmatics may not rely on its own interrogatory answers to rebut the motion for summary judgment. Rule 56(c) expressly provides that answers to interrogatories may be considered on a motion for summary judgment. *See* Fed.R.Civ.P. 56(c). Still, in order to be considered on a motion for summary judgment, a party's interrogatory answers, as with other forms

of evidence, must still be admissible under the Federal Rules of Evidence. *See Rohrbough,* 916 F.2d at 973. Furthermore, courts have required answers to interrogatories to satisfy the prerequisites for consideration of affidavits pursuant to Rule 56(e). *See Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 273 n. 1 (2d Cir.1968) ("Although answers to interrogatories may be considered 'so far as they are admissible under the rules of evidence,' where such answers are not based upon personal knowledge, such answers have no probative force."); *H.B. Zachry Co. v. O'Brien,* 378 F.2d 423 (10th Cir.1967). Therefore, subject to the Federal Rules of Evidence and Rule 56(e), the Court shall consider portions of the Plaintiff's answers to Defendant's interrogatories in reviewing the motion for summary judgment.

### C. *Count I (Breach of Contract)*

■ Showers argues that he is entitled to summary judgment because the testimony of Ryder employees demonstrate that Planmatics lost Ryder's business as a result of the over-billing practices uncovered in the 1995 audit. In Maryland, "a party suffering a breach of contract is entitled to recover as damages the amount that would place him in the position he would have been in had the contract not been broken." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 506 (4th Cir.1986). "Expectancy damages for breach of a covenant not to compete generally are the profits that would have been realized had no breach occurred." *Fowler v. Printers II, Inc.,* 89 Md.App. 448, 473, 598 A.2d 794, 806 (1991). Where the recovery sought is lost profits, Maryland courts apply a three-prong test which requires that " '(1) a plaintiff must show that a breach by the defendant was the cause of the loss'; (2) damages may not be awarded unless, when the contract was executed, the defendant could have

reasonably foreseen that the loss of profits would be a probable result of a breach; and (3) lost profits may not be recovered unless they can be proved with 'reasonable certainty,' as distinguished from 'certainty.' " *Aeropesca Ltd. v. Butler Aviation Intern., Inc.,* 44 Md.App. 610, 632–33, 411 A.2d 1055, 1068 (1980) (quoting *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 330, 389 A.2d 887, 907 (1978)); *see also* 1 Howard A. Specter & Matthew W. Finkin, *Individual Employment Law and Litigation* § 8.14 (1989). Thus, in the instant action, Plaintiff must produce legally competent evidence from which a reasonable jury could conclude that, if Showers had not breached the non-competition agreement, Planmatics could have procured future business from Ryder.

■ To prove that Plaintiff cannot sustain this evidentiary burden, Defendant has produced evidence demonstrating the ultimate cause of Plaintiff's loss pre-dated his resignation in June 1996 and subsequent employment by Ryder. The 1995 audit revealed that Planmatics overcharged Ryder by $48,941.01. After the 1995 audit, the evidence indicates that, with or without Showers, Planmatics received no new business from Ryder. The directive from Mr. Fiallo to ostracize Planmatics strongly indicates that the company was already blacklisted before the alleged breach. Even if the disputed statements of Mr. Fiallo were hearsay, the testimony relating to the statements of Mr. Fiallo are not the only evidence supporting the conclusion that the loss of Ryder's business stemmed from the results of the 1995 audit not Showers' alleged breach of the non-competition agreement. The deposition testimony of Ms. Miller and Mr. Gibler concerning their personal knowledge and review of the Planmatics' invoices improperly billed to Ryder are clearly not hear-

say and are admissible evidence. Similarly, Ms. Miller's testimony that, as a result of the directive, she never directed business to Planmatics during her tenure as manager is not hearsay. Mr. Gibler's statement that he personally never used Planmatics is not hearsay as well. Defendant also produced testimony of Mr. deSilva establishing that Planmatics did not receive any new business from Ryder following the audit while Mr. Fiallo was in charge. The affidavit of James Potts, a former executive of Planmatics, stating that, after the discharge of Riser, Planmatics did not expect and ceased to obtain new business from Ryder also qualifies as admissible evidence. Together, the evidence produced by Showers reveals the failure of an essential element in Planmatics' claim for actual damages—proof that Showers' breach caused its loss of Ryder's business and any resulting profits. Therefore, in order to survive summary judgment, Plaintiff must advance evidence that reasonably supports a causal link between Showers' breach of the non-competition agreement and its loss of profits.

To sustain its burden, Planmatics maintains that the fact of Showers' hire indicates that Ryder was pleased with his work. Thus, Plaintiff maintains that the Court is required to infer that, but for the breach, Ryder would have continued to utilize Showers' consulting services as an employee of Planmatics instead of hiring him directly. The Court disagrees with Plaintiff's interpretation of the summary judgment standard of review. The summary judgment standard does not require the Court to accept every assertion of fact or unsupported claims advanced by the nonmoving party. Once the moving party produces evidence demonstrating the failure of an essential element of the nonmoving party's case, the evidentiary standard under Rule 56 rises to require the nonmoving party to "set forth specific facts showing there is a genuine issue for trial" by affidavit, depositions, answers to interrogatories, admissions, or other evidence that would be admissible at trial. Fed.R.Civ.P. 56(c), (56)(e); *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995). At a minimum, the nonmovant's evidence must show that the nonmoving party has access to admissible evidence for presentation at trial that will create a genuine issue of fact for the jury. *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

As discussed above, Defendant has produced competent evidence showing that billing irregularities and questionable business practices directly caused the loss of Ryder's business long before Shower's alleged breach of the non-competition agreement. Still, in the context of a contract not to compete, it has been found that the fact of a breach accompanied by the directing of profits to the breaching party can provide the requisite causal nexus even when the injured party has no prior business relationship with the customers in dispute. *See National Micrographics Systems, Inc. v. OCE–Industries*, 55 Md.App. 526, 535–39, 465 A.2d 862, 869–70 (1983). In *National Micrographics*, the court found that, pursuant to the non-competition clause in an exclusive distributor agreement, the supplier had a duty to refer new customers to its territorial sales agent rather than making the sales directly itself. *Id.* at 538, 465 A.2d 862. Thus, the court concluded that "[b]ecause [the defendant] sold directly to customers that it should have referred, it is estopped by its wrongful conduct to deny that [the plaintiff] would not have made the sales." *Id.* at 538, 465 A.2d 862.

However, the *National Micrographics* case is factually inapposite to the current situation. In *National Micrographics*, the plaintiff had no prior relationship with the disputed customers and the customers purchased the same products from the de-

fendant at the same price offered by the plaintiff. *Id.* at 535, 465 A.2d 862. Such facts reasonably support the inference that, if the defendant had properly performed its contractual duty to refer the new business, the customers would have tendered no objection to purchasing the same products from the plaintiff. By contrast, the evidence in the present case indicates that the disputed customer voiced a strong objection to any future business dealings with the Plaintiff independent of any alleged breach by Showers. In this case, Plaintiff cannot rely on a series of unsupported inferences that contradict the available evidence to survive summary judgment on its claim for damages for breach of contract. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993). Plaintiff has failed to adduce evidence for which a reasonable jury could find that Showers' alleged breach of the non-competition agreement caused Planmatics to lose Ryder's business. Having demonstrated the absence of an .essential element of Plaintiff's claim for compensatory damages, Showers is entitled to summary judgment as to this request for relief embodied in Count I of Plaintiff's complaint. Accordingly, the Court shall grant-in-part Defendant's Motion for Summary Judgment as to Plaintiff's claim for actual damages.

 Even though the available evidence shows that a reasonable jury could not conclude that Showers' alleged breach caused Planmatics to lose Ryder's business, Maryland courts recognize that "whenever there is a contract and breach of that contract 'the trial court *must assess some damages,* nominal or substantial as it shall find to be proper on the law' and the evidence." *Stueber v. Arrowhead Farm Estates Ltd. Partnership,* 69 Md.App. 775, 779, 519 A.2d 816 (1987) (emphasis in original) (quoting *M & R Contractors & Builders, Inc. v. Michael,* 215 Md. 340, 344–45, 138 A.2d 350 (1958)); *see Della Ratta, Inc.*

*v. American Better Community Developers, Inc.,* 38 Md.App. 119, 380 A.2d 627 (1977). It is true in other Jurisdictions that proof of actual damages is an essential element to sustain a breach of contract action. *See Allegheny Energy, Inc. v. Virginia Elec. and Power Co.,* 70 F.Supp.2d 607 (D.Md.1999) (interpreting Virginia law to require plaintiff seeking to establish breach of contract to show that breach caused injury or damage to plaintiff.); *Motor City Bagels, L.L.C. v. American Bagel Co.,* 50 F.Supp.2d 460, 477 (D.Md.1999) (same). However, in Maryland, "[i]t is well settled that every injury to the rights of another imports damages, and if no other damages is established, the party injured is at least entitled to a verdict for nominal damages." *Cottman v. Dept. of Natural Resources,* 51 Md.App. 380, 384, 443 A.2d 638 (1982) (quoting *Baltimore v. Appold,* 42 Md. 442, 457 (1875)). Although the record demonstrates that Plaintiff cannot sustain a claim for lost profits caused by Showers' alleged breach of the non-competition agreement, Plaintiff's entire cause of action for breach of contract does not fail as a matter of law. Maryland still affords the aggrieved party to a breach of contract action the remedy of nominal damages or other appropriate relief. As Defendant's motion for summary judgment is confined to the issue of damages, the Court denies-in-part the motion as to the balance of Plaintiff's breach of contract claim.

### D. *Count II (Breach of Fiduciary Duty)*

First, Defendant argues that Plaintiff is barred from asserting any other conduct that could amount to a breach of fiduciary duty because such allegations are outside the scope of the complaint. Additionally, Showers contends that Plaintiff has no proof that he breached any fiduciary duty. Lastly, similar to the above discussion,

Defendant maintains that Plaintiff's breach of fiduciary duty claim must also fail because Planmatics cannot prove that any damages resulted from the alleged breach.

### 1. *The Scope of the Complaint*

██ Defendant alleges that the scope of Plaintiff's breach of fiduciary duty claim is limited to the alleged breach of his duty of loyalty by negotiating for employment with Ryder while he was still an employee of Planmatics. The Federal Rules of Civil Procedure only requires the complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Under this notice pleading standard, "[a]ll that is required is that the pleaded claim afford 'the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved.' " *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir.1995) (quoting *Burlington Industries, Inc. v. Milliken & Co.*, 690 F.2d 380, 390 (4th Cir.1982)). "A major aim of American procedural reform has been to reduce reliance on pleadings to refine the evidentiary basis for a litigant's claim." *Hodgson v. Virginia*, 482 F.2d 821, 823 (4th Cir.1973). "Rule 8 of the Federal Rules of Civil Procedure encourages 'a short and plain statement of the claim'; details are to be developed by appropriate discovery proceedings." *Burriss v. Texaco, Inc.*, 361 F.2d 169, 175 (4th Cir.1966).

██ The complaint states that "Showers owed Planmatics the duties of loyalty, obedience and care." (Compl. at 4) The complaint also indicates that, while he was employed by Planmatics, Showers engaged in conduct that advanced his own self-interests to the detriment of his employer. Assumed as true, such alleged conduct may give rise to a fair inference of the failure of Showers to perform his duties consistent with requisite standards of .care

and loyalty owed to his former employer. The complaint alleges that Showers' breach of his fiduciary duties proximately and actually caused Planmatics damage. The Court finds that the allegations and claims set forth in the complaint were sufficient to put Showers on notice of the alternative theories for breach of fiduciary duties that could be raised against him. *See De Leon v. Beneficial Const. Co.*, 55 F.Supp.2d 819 (N.D.Ill.1999) (charge of breach of fiduciary duty is subject to notice pleading standard of Federal Rules); *Kessen v. Plumbers' Pension Fund, Local 130*, 877 F.Supp. 1198, 1205 (N.D.Ill.1995) ("[C]hange in theories is not fatal to [plaintiff's] breach of fiduciary duty claim due to the federal systems' 'forgiving' notice pleading rules.").

Equally important, the Federal Rules of Civil Procedure

restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues.

*Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947). Here, it appears that discovery served its function of flushing out the factual underpinnings of Plaintiff's claim for breach of fiduciary duties. The Plaintiff's answers to Defendant's interrogatory served on Defendant in November 1998 clarified the scope of the breach of fiduciary duties claim. In response to Defendant's request for the facts that support the breach of fiduciary duty claim, Plaintiff answered as follows:

Showers breached his fiduciary duty by: (a) failing to pay the proper amount of attention to the retention of the current clients of Planmatics; (b) negotiating with Ryder a position or business for himself while making Planmatics believe that he was acting according to his employment agreement such that he was working to grow the business of Planmatics; and (c) refusing to execute the promised steps to grow the warehouse consulting business of Planmatics.

While purportedly representing the best interests of Planmatics, Showers negotiated directly with Ryder for employment or business. Mr. Showers['] interests in representing his own interests and reputation and never the interests of the Planmatics team. Mr. Showers freelanced and did not share status reports or any business development, instead he kept them to himself.

While employed by Planmatics, Showers engaged in poor and unethical business practices that damaged Planmatics' reputation. Showers encouraged Glen Riser to make unethical and unreasonable requests from Planmatics such as repayment for Riser's employment services of relocating Showers to Planmatics.

Showers failed to build the warehouse consulting business of Planmatics. Showers discontinued certain consulting engagements on behalf of Planmatics when there was an opportunity to proceed.

(Pl.'s Opp'n Ex. D at 9–10) The interrogatory answers outline Showers alleged failure to perform his duties with the requisite level of skill, care and loyalty imposed by law. As Showers received the interrogatory answers setting forth these alternative theories over two years ago, he can hardly claim surprise or prejudice by the Court's consideration of the issue. *See Foster Medical Corp. Employees' Pension Plan v. Healthco, Inc.*, 753 F.2d 194, 197 (1st Cir.1985) ("[C]onsidering that the claim was explicitly raised in plaintiff's opposition papers, defendants can scarcely claim surprise or prejudice."); *National Sur. Corp. v. Charles Carter & Co., Inc.*, 539 F.2d 450, 458 (5th Cir.1976) (finding explicit claim for negligence in answers to interrogatories, although not specified in the complaint, sufficiently placed issue before court). The interrogatory answers provided more than a sufficient explanation for Showers to mount a defense. Accordingly, the Court finds that the enumerated grounds supporting Count II are properly before it for consideration.

### 2. *The Duty of Loyalty*

 Showers admits that he owes Plaintiff the specific fiduciary duties imposed upon employees by Maryland law. Showers disputes that he breached any fiduciaries duties to Plaintiff. Under Maryland law, "every contract of employment [incorporates] an implied duty that an employee act solely for the benefit of his employer in all matters within the scope of employment, avoiding all conflicts between his duty to the employer and his own self-interest." *Maryland Metals, Inc. v. Metzner*, 282 Md. 31, 38, 382 A.2d 564, 568 (1978); *see also King v. Bankerd*, 303 Md. 98, 492 A.2d 608 (1985). "[P]rior to his termination, an employee may not solicit for himself business which his position requires him to obtain for his employer. He must refrain from actively and directly competing with his employer for customers and employees, and must continue to exert his best efforts on behalf of his employer." *Maryland Metals, Inc.*, 282 Md. at 38, 382 A.2d 564.

 As to the allegations implicating the duty of loyalty, Showers highlights that Planmatics has no evidence of negotiations for employment or freelancing with Ryder during his tenure at Planmatics. In response, Planmatics alleges that Showers

solicited Ryder's business during his tenure to advantage his own consulting business in breach of his fiduciary obligations. Plaintiff argues that a reasonable jury could infer from Showers contracting with Ryder soon after his termination from Planmatics that Showers undermined its relationship with Ryder during his tenure. As discussed earlier, such an inference contradicts the evidence establishing that the billing irregularities revealed in the 1995 audit soured Planmatics' relations with Ryder. "The nonmoving party ... cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). Although the above referenced allegations are sufficient to place the issue before the Court under the liberal notice pleading standard, the party opposing a properly supported motion for summary judgment must still satisfy its evidentiary burden of demonstrating the existence of a genuine issue of material fact.

The duty of loyalty does not preclude an employee from making preparatory "arrangements to compete with their employers prior to leaving the employ of their prospective rivals." *Maryland Metals, Inc.,* 282 Md. at 39–40, 382 A.2d 564. Before leaving his employment, an employee "may advise customers with whom he has been in contact of his proposed termination of employment." *Id.* at 39 n. 3, 382 A.2d 564. Conduct "may rise to the level of a breach of an employee's fiduciary duty of loyalty ... where the employee has committed some fraudulent, unfair, or wrongful act in the course of preparing to compete in the future." *Id.* at 40, 382 A.2d 564. "Solicitation of [the] employer's customers prior to cessation of employment ... [and] usurpation of [the] employer's business opportunity" are examples of such misconduct. *Id.* "[C]ourts have not hesitated to condemn as a breach of fidelity the act of an employee who

seeks to take advantage of his knowledge of future business opportunities of his employer...." *C–E–I–R, Inc. v. Computer Dynamics Corp.,* 229 Md. 357, 369, 183 A.2d 374, 380 (1962). Yet, in this case, there is no evidence that Showers actively solicited Ryder's business or wrongfully withheld future business opportunities while he was still employed by Planmatics. While providing marketing and consulting services to Ryder after his termination may have violated the terms of the alleged non-competition agreement, the mere fact of Showers' employment by Ryder subsequent to his termination does not alone implicate misconduct giving rise to a violation of his fiduciary duties. "[B]usiness energy and initiative by former employees in securing work after their employment has been terminated are not synonymous with treachery during the employment." *Operations Research v. Davidson,* 241 Md. 550, 563, 217 A.2d 375, 382 (1966).

### 3. *The Duty of Exercise Ordinary Skill*

As to the duty of care, an employee "is bound to the exercise of due and ordinary skill in the employment of his art or business about it, or, in other words, to perform in a workmanlike manner." *Baltimore Baseball Club & Exhibition Co. v. Pickett,* 78 Md. 375, 385, 28 A. 279 (1894), *quoted in* Stanley Mazaroff, *Maryland Employment Law* 150 (1990). " 'Ordinary skill' means that degree which men engaged in that particular art usually employ, not that which belongs to a few men only, of extraordinary endowments and capacities." *Id.* Plaintiff alleges that Showers failed to pay the proper amount of attention to retaining clients for Planmatics, develop its warehouse consulting business, and properly complete a pending consulting engagement that could have matured into future business for Planmatics. Showers argues that he did

not breach his duty of care. To prove that he did not prematurely discontinue the Centerior Energy project, Showers has produced the affidavit of Herbert Jahn, Ryder's project leader on the Centerior Energy Project. In his affidavit, Mr. Jahn stated that "Showers' portion of the work concluded in June 1996, at which time his services were no longer required...." (Def.Mot.Summ.J, Ex. 7 Jahn Aff. at 2) Consequently, at the time of his resignation, there was no continuing consulting engagement for Showers to perform on Planmatics' behalf.

 Plaintiff has failed to produce contradictory evidence on this matter sufficient to survive summary judgment. The statements in Plaintiff's interrogatory answers as to Showers' failure to properly complete the Centerior project contradict deSilva's deposition testimony. In his deposition, deSilva testified to having little recollection or involvement in the project, but did recall that the Centerior project ended close to the time of Showers' resignation. (Def.Mot.Summ.J, Ex. 2 deSilva Depo. at 440) "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiffs testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984). Given that deSilva's own deposition testimony supports the affidavit of Mr. Jahn, the Court finds that Showers did not prematurely resign from Planmatics in breach of a fiduciary duty.

Similarly, Plaintiff has not produced any legally competent evidence from a jury could reasonably conclude that Showers failed to execute his other duties with the degree of skill, diligence, and attention possessed by those of ordinary skill, competency, and standing in the business for which he was employed. The unsubstantiated allegations of Showers' failure to develop Planmatics' warehouse consulting business and retain its customers are not sufficient to survive summary judgment. A party may not create an issue of fact through bald assertions, unsupported contentions, and conclusory statements. *See* Fed.R.Civ.P. 56(e); *Pitman v. Aran*, 935 F.Supp. 637, 646–47 (D.Md.1996). As to Showers' alleged failure to develop the warehouse consulting business, "[t]he employee is not an insurer of the success of the undertaking; the employee is bound merely to exercise reasonable care, skill, and judgment." 27 Am.Jur.2d *Employment Relationship* § 221 (1996). There is no evidence outlining specific instances of misconduct by Showers that would amount to a breach of fiduciary duty. As discussed earlier, the evidence demonstrates that the conduct of Planmatics' management rather than Showers' performance of his duties negatively impacted the company's ability to retain its customers and further its warehouse consulting business.

 Plaintiff maintains that two alleged complaints about Showers are sufficient to create a genuine issue of material fact as to whether Showers performed his duties with the level of skill imposed by law. In its own interrogatory answers, Plaintiff states that a client, Proctor & Gamble, requested Showers be removed from a project. In his deposition, deSilva stated that Riser complained that Showers was not properly recognizing his authority on the Ryder project. On their face, these statements raise hearsay issues if offered to prove the truth of the matters asserted therein, i.e., a client requested Showers' removal and Showers' failed to recognize Riser's authority. *See* Fed.R.Evid. 801(c). However, statements offered not to prove the truth of the matter asserted therein, but to prove the fact of a complaint are not hearsay. *See General Elec. Capital Corp. v. DirecTV, Inc.*, 94 F.Supp.2d 190, 200 (D.Conn.1999). Plaintiff's purpose is un-

clear. Nevertheless, even if used to prove the fact of complaints against Showers, the statements fail to identify specific instances of misconduct by Showers that could reasonably demonstrate his failure to perform his duties with the ordinary degree of skill, diligence, and care expected of an average member of his profession. A reasonable jury could not conclude from Plaintiff's unsupported contentions that Showers breached his fiduciary duties.

Planmatics also alleges that Showers engineered the poor and unethical business practices with Riser that damaged its relationship with Ryder. The only evidence of the alleged misconduct is the deposition testimony of Anura deSilva. Mr. deSilva testified that Showers unilaterally purchased the cell phone for Riser with his own funds and billed Planmatics for the expenditure. (Def.Mot.Summ.J, Ex. 2 deSilva Depo. at 396–97) Believing Riser's assurances that the phone was for official communications, Mr. deSilva billed the expense to Ryder. Even assuming the truth of Mr. deSilva's testimony, deSilva stated that he ultimately decided to bill Ryder for the expenditure. It was deSilva's decision to pass the cost along to Ryder that damaged the business relationship. Furthermore, Plaintiff's account overlooks that the personal cell phone expense was one of eighteen enumerated charges for which the $48,941.01 credit was taken. (Def.Mot.Summ.J, Ex. 4 Miller Depo. Ex. 2) There is no legally competent evidence indicating any duplicity on Showers' part with respect to the other charges improperly billed to Ryder. After three years of litigation, from the record before it, the Court can find no genuine issue of material fact on Plaintiff's breach of fiduciary duty claim. Accordingly, the Court shall grant Defendant's motion for summary judgment as to Count II of Plaintiff's complaint.

### E. *Subject Matter Jurisdiction*

Finally, the Court's disposition of Plaintiff's claims raises a question of whether this Court may still retain jurisdiction over this matter. Subject matter jurisdiction was predicated upon this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. As a result of the Court's rulings, Plaintiff may only show entitlement to nominal damages on its breach of contract claim. Consequently, Plaintiff's claim for relief now falls below the requisite amount in controversy of $75,000 for diversity jurisdiction. 28 U.S.C. § 1332(a) When subsequent events reveal that the claim for relief falls below the jurisdictional amount, the Fourth Circuit has instructed district courts to apply the following two-part test:

> First, the court should look to the face of the complaint itself to determine whether it is a legal certainty that plaintiff's claims do not reach the required amount. Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case..... Second, if some event subsequent to the complaint reduces the amount in controversy, such as the dismissal of one count based on the defendant's answer, the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case. Here, courts should be guided by the same kind of factors that inform decisions in the supplemental jurisdiction context when the federal basis of a case disappears.

*Shanaghan v. Cahill,* 58 F.3d 106, 112 (4th Cir.1995). On the first issue, the Court finds that, from the face of Plaintiff's complaint, it satisfied the requisite jurisdictional amount. The prayer for relief on the breach of contract claim alone is $500,000

which it not beyond reason in the context of the breach of non-competition agreement. Therefore, the Court did have diversity jurisdiction over the case at its filing. In applying the second prong of the *Shanaghan* analysis,

> [t]he Court identified five factors to be used by the district court in the exercise of its discretion ...: (1) an evaluation of the convenience and fairness to both parties if the case is kept or dismissed, taking into consideration the interests of judicial economy; (2) whether the amount claimed in the complaint was made in good faith, or whether the plaintiff was consciously relying on flimsy grounds to file in federal court; (3) whether the state statute of limitations would bar refiling the action in state court if dismissed; (4) the amount of time and energy that the federal court already has expended in connection with the case, and whether it might be more efficient to just keep it; (5) whether the case presents some significant issue of state law best decided in state court.

*Peiffer v. King Pontiac Buick GMC, Inc.*, 105 F.Supp.2d 470, 472–73 (D.Md.2000).

At the outset, the third factor weighs in favor of dismissal. Under Maryland law, Plaintiff's breach of contract claim is subject to the general three-year statute of limitations. Md.Code. Ann, *Courts & Jud, Proc.* § 5–101 (1998). The limitations period began when Plaintiff's cause of action accrued, the time of the alleged breach in July 1996. *See e.g., Cotham v. Bd. of County Commissioners*, 260 Md. 556, 273 A.2d 115 (1971). Nevertheless, dismissal at this point would not bar Plaintiff from re-filing suit in state court due to the expiration of the statute of limitations. Maryland Rule 2–101 states that

Except as otherwise provided by statute, if an action is filed in a United States District Court ... within the period of limitations prescribed by Maryland law and the foreign court enters an order of dismissal for lack of jurisdiction, because the court declines to exercise jurisdiction, ..., an action filed in this State within 30 days after the foreign court's order of dismissal shall be treated as timely filed in this State.

Md.R.Civ.P.Cir.Ct. 2–101; *see also Peiffer,* 105 F.Supp.2d at 472–73. As Plaintiff filed its breach of contract action in December 1997, the statute of limitations was satisfied and Plaintiff may file its action in Maryland's state court within 30 days of an order of dismissal for lack of subject matter jurisdiction. As to other factors, the Court is not prepared to make a final assessment. The parties have not had an opportunity to be heard on the matter. Furthermore, Defendant still has an outstanding counterclaim for breach of contract that appears to meet the jurisdictional amount.[2] Accordingly, the Court will postpone its determination on whether retention of jurisdiction over this case is warranted under the circumstances.

### III. CONCLUSION

For the reasons stated above, the Court will grant-in-part and deny-in-part Defendant's Motion for Summary Judgment. The Court directs the parties to contact it by conference call to fully discuss their positions on dismissal of their respective breach of contract claims. An Order consistent with this Opinion will follow.

---

**2.** The Court notes that the federal supplemental jurisdiction statute or other state statutes may prevent Defendant's counterclaim from being barred by the statute of limitations. *See* 28 U.S.C. § 1367(d).